66  345<br>
81  677

---

## H. & T. C. RY. CO. v. JAMES CARSON.

(Case No. 5734.)

1. CONTRIBUTORY NEGLIGENCE—If a party, injured near a railroad crossing, by his horses becoming frightened at a passing engine, was guilty of negligence in not stopping his team when warned by a flagman, it did not contribute to his injury if the engineer, after discovering the danger, refused to use the means in his power to prevent the injury.

2. RAILROAD CROSSINGS—USE—The first use of a street is for the ordinary travel over it; the right of a railroad to operate its trains across it is subordinate to the use of the general public.

3. NEGLIGENCE—EVIDENCE—See opinion for evidence of negligence held sufficient to support a verdict for damages.

APPEAL from Grayson. Tried below before the Hon. R. Maltbie.

On September 1, 1885, the appellee filed his petition in the district court, seeking to recover of the appellant $10,000 damages, alleged to have been sustained by him at the main street crossing on

appellant's road, in the city of Denison, and alleging that when he started across appellant's yards, tracks and switches, the way was clear and unobstructed, but, while plaintiff was so crossing, an engine owned by defendant suddenly appeared from behind an obstruction to plaintiff's vision, moving along one of the tracks or switches, and across the main street, without giving any notice or warning of its movements, and ran so near his team as to frighten it, and cause it to suddenly turn and upset his wagon, which, with the load, fell on plaintiff and injured him; that defendant had no flagman at the crossing, or, if it did, he did not give plaintiff any notice of danger; that no precaution was taken or used by defendant to prevent persons crossing at that point from being injured; that those in charge of the engine exercised no care whatever in the movement of the engine.

Defendant answered by general denial and specially pleaded contributory negligence in appellee in approaching defendant's track, and in the management of his team. Trial was had November 5, 1885, and verdict and judgment rendered in favor of appellee for $2,500.

*R. DeArmond* and *C. N. Buckler*, for appellant, cited: Railway Company *v.* Graves, 59 Tex., 330; Pierce on Railroads, 348, 349, and cases there cited.

*G. G. Randell* and *Wilkins & Patty*, for appellee, cited: Railway Company *v.* Wilson, 60 Tex., 142; Railway Company *v.* Anderson, Tex. Law Rev., vol. 4, p. 211.

Robertson, Associate Justice.—The only assignment of error the appellant has briefed is in the following language:

"The jury erred in finding for plaintiff in any sum whatever, because the evidence proved the following facts beyond any doubt: That the defendant had a flagman stationed at the crossing, who, in the discharge of his duty, attempted to stop plaintiff's team in ample time to have avoided the danger, but was prevented from so doing by plaintiff; that the bell on the engine was being rung; that the defendant was in the legitimate use of the crossing at the time of the accident, and that it was without negligence; that plaintiff's driving his team forward, after the attempt of the flagman to stop him, was contributory negligence; that the cause of the team becoming unmanageable and turning around was from the insufficiency of plaintiff's harness, and the manner in which he managed his team, and from the horses being 'in good fix,' and a 'little touchy,' and unused to the cars."

If the plaintiff was guilty of negligence in not stopping his team when the flagman first warned him, it did not contribute to his injury, if the engineer, after discovering the danger, refused to use the means in his power to prevent the injury.    He testified that he saw the horses were frightened when he moved on after the flagman had stopped them and signalled him to come on.    He states that when he " got opposite, they (the horses) began to 'cut up,' and the bridle on the off-horse came off."    A charge in the petition is that the engineer ran the locomotive too near the team and frightened them, and thus caused the injury. The engineer further testified that he made no pause after discovering that the horses were frightened. How far the heads of the horses were from the track on which the engine was moving is uncertain.    The distance varies, in the estimate by different witnesses, from four to thirty feet.    To run the engine up immediately in front of a team, only four, or even ten, feet away, when the horses are already frightened by the approaching locomotive, is a theory supported by the evidence, and, if believed by the jury, warranting the verdict rendered.    It was the duty of the engineer, when he discovered the danger, to avoid it, if necessary, by stopping his engine. His failure to do this is not unjustly characterized by the verdict as negligence.

The preponderance of the evidence supports the view that there was no break in the harness until the team was frightened by the moving engine.    There is a conflict in the testimony as to whether the bell on the locomotive was being rung.    And the defendant was not in the legitimate use of the crossing at the time of the accident, if that use involved the plaintiff in danger, avoidable by the defendant postponing its use of the crossing for a few moments.    The supreme and first use of a street is for the ordinary travel over it; the right of a railroad to operate its trains across it is subordinate to the use by the general public.

There is evidence sufficient to sustain the verdict, whether the plaintiff ought to have stopped his team earlier or not, and as no complaint is made of the charge or other ruling of the court, or of the size of the verdict, the judgment of the district court will be affirmed.

AFFIRMED.

[Opinion delivered June 1, 1886.]