## GULF, COLORADO & SANTA FE RAILWAY COMPANY v. R. D. BOX.

### No. 7092.

1. **Briefs—Propositions May be Grouped.**—It is recognized practice to group assignments together when they relate to the same subject, and when such assignments announce the propositions insisted upon with reasonable precision they may be used as propositions.

2. **Care by Driver of Team in Approaching a Railway Track.**—In an action for personal injuries to the wife of the plaintiff, inflicted by his team running away and overturning the wagon they were drawing, thereby injuring his wife, the team being frightened by the whistling of the engine near by and which was approaching a public crossing, the court properly charged that "the law devolved upon the plaintiff the duty of exercising such ordinary care in approaching said railway with his family, team, and cattle as would be used by a prudent person under the circumstances, and if from the evidence you believe that he failed to exercise such care, and that thereby he contributed to the runaway of said team, then the plaintiff would be guilty of what is known in law as contributory negligence, and if you so find you will find a verdict for the defendant, although you may also believe that the defendant's employes blew the whistle negligently and wantonly." The plaintiff was only bound to use ordinary care to prevent injury to his wife, and the charge sufficiently indicated it, and it was not error to refuse further charges on same subject.

3. **Blowing Whistle on Approaching Crossing—Care.**—If an engineer in giving the usual signal on approaching a public crossing by blowing the whistle continues such whistle after he became apprised of the fright of a team near by, endangering life, such acts would be negligence.

4. **Mental Pain as Ground of Damages.**—In an action by husband for damages for personal injuries inflicted upon his wife, caused by the negligence of railway employes, there being no allegation of mental suffering by the husband, it was not error to instruct upon the measure of damages as follows: "For the injury to his wife, the pain and suffering, including mental anguish and expenses occasioned by such injury."

5. **Fact Case.** —See facts supporting a verdict for $7500 for injuries to wife of plaintiff by negligent or wanton acts of railway employes in frightening the team of plaintiff and causing it to run away, thereby causing serious injury.

APPEAL from McLennan. Tried below before Hon. Eugene Williams. The opinion states the case.

*J. W. Terry*, for appellant, cited Deville v. Railway, 50 Cal., 383; Sutherland v. Railway, 105 Mass., 342; Whitney v. Railway, 69 Me., 208; Railway v. Graves, 59 Texas, 330; Railway v. Chapman, 57 Texas, 75; Railway v. Cowser, 57 Texas, 303; Railway v. Ormond, 62 Texas, 274; 2 Thomp. on Neg., sec. 1289.

*Burrow & Kincaid*, and *A. C. Prendergast*, for appellee, cited Rev. Stats., art. 4232; amended Acts of 1883, p. 28; Whart. on Neg., sec. 836 (citing Railway v. Barnett, 59 Pa. St., 259; Railway v. Fullerton, 14 C. B., N. S., 54; Railway v. Harmon, 47 Ill., 298; Hill v. Railway, 55 Me., 438); Whart. on Neg., sec. 898; Billman v. Railway, 40 Am. Rep., 238;

1 Thomp. on Neg., p. 419; Railway v. Hite, 81 Va., 767; Culp v. Railway, 17 Kan., 475; Railway v. Carr, 73 Ga., 557; 28 Am. and Eng. Ry. Cases, 685; Zimmerman v. Railway, 2 Am. and Eng. Ry. Cases, 191; Railway v. Riedmond, 13 Am. and Eng. Ry. Cases, 515; Milburn v. Railway, 29 Am. and Eng. Ry. Cases, 244; Railway v. Chapman, 57 Texas, 75; Railway v. Carson, 66 Texas, 345; Supreme Court Rules 29–31, 34, 23–26; Land Co. v. Chamberlain, 70 Texas, 138; Hughes v. Railway, 67 Texas, 595; Smith v. Whitfield, Id., 124; Cannon v. Cannon, 66 Texas, 682; Shumard v. Johnson, Id., 70; Railway v. Boozer, 70 Texas, 530; Railway v. Lee, 70 Texas, 496; Railway v. Smith, 65 Texas, 167; Rosenthal v. Middlebrook, 63 Texas, 333; Railway v. Leak, 64 Texas, 655; Railway v. Casey, 52 Texas, 124; Endick v. Endick, 61 Texas, 559; Cook v. Dennis, 61 Texas, 246; Blanton v. Mayes, 58 Texas, 422; Altgelt v. Brister, 57 Texas, 432.

MARR, JUDGE, *Section A.*—The plaintiff brought this suit in the court below, and recovered damages of the defendant company on account of personal injuries to his wife, alleged by him to have been inflicted as the direct consequence of the "negligent and wanton" acts of the engineer or other employes in charge of the defendant's train of cars "in blowing and continuing to blow the whistle of the engine" attached to said train, "loud and shrill," and "when there was no reasonable excuse, occasion, or necessity for blowing said whistle," whereby the horses to the wagon in which plaintiff's wife was traveling "became frightened, ran away, and overturned the wagon and threw her violently to the ground," etc. "That the engineer and fireman saw that plaintiff's team was frightened by the blowing of said whistle, and in time to have ceased said blowing and to have stopped said train, and thus have prevented the injury," etc.

It must be held that the jury found that the injuries were the result of wanton acts and omissions upon the part of the defendant's servants, for the court distinctly instructed the jury to find for the defendant unless they believed from the evidence that "the blowing of the whistle" complained of was done both "negligently and wantonly" and under such circumstances as did not justify the sounding of the whistle under the law, which the court also explained to the jury. The appellee objects to a consideration of any of the assignments of error, because each assignment and its proposition is not separately presented in the brief. All of the assignments relied upon are copied in the brief, and each of them is entirely clear and "a distinct specification" of the error alleged. Appellant's counsel, however, has grouped those relating to the same subject, retaining their proper numbers, and has made an appropriate statement from the record under the group and of his propositions (numbering them) whenever the assignment is not in the form of a proposition. No motion has been made to suppress the briefs for

want of form (if tenable), and we think that appellant is entitled to a consideration of the assignments. In the present instance we have had no difficulty in ascertaining the questions at issue from the briefs, and the method adopted of presenting them has facilitated our labors.

The fifth, sixth, seventh, eighth, ninth, tenth, and twelfth assignments of error relate entirely to the refusal of the court below to allow seven special instructions requested by the defendant's counsel. These instructions present separately, in different form and with merely verbal variations, the single issue of contributory negligence, or not, upon the part of the plaintiff. We will give a summary of the evidence upon which these charges are predicated, as well as that of the court upon the same subject.

The plaintiff was traveling through McLennan County in August, 1886, with his wife and four small children, in "a four-horse wagon," and along a public road which intersected, or had been intersected by, the defendant's railway track and bed. The point of intersection was a public crossing, and the plaintiff was approaching toward it in his wagon, while his two oldest sons (the eldest 9 years of age) "were traveling horseback and driving a small bunch of cattle, about eighteen head." The direction the party was going was about northeast. The railway track extended nearly due north and south. The plaintiff's party was therefore to the west of the railway. When the wagon (driven by the plaintiff) had reached a point shown by actual measurement to be 273 feet from the public crossing on the railway and 196½ feet from the nearest point to the railway track, the cattle in charge of the boys being ahead and nearer to the railway, the plaintiff, according to his testimony, discovered the smoke of an advancing train running southward "about 500 yards from him," and north of the crossing. He heard the engine whistle for the crossing (presumably at the proper distance, "eighty rods" from it), and at that time his "horses noticed it and threw up their heads," but did nothing else until subsequently when the whistle was again sounded at or near the crossing and repeatedly thereafter, "quick, sharp, and loud," etc. It will be understood that we are not now giving all of the testimony, but simply that in relation to the question in hand. When the whistle was first sounded north of the crossing the plaintiff then "had hold of the lines." Observing the proximity of his cattle to the track, he "stopped his team and gave the lines to his wife, and went to turn the cattle back from the railway track to keep them from crossing." He and his boys succeeded in doing this, and, getting between them and the track, "turned them back" toward the west. "By this time the train was forty or fifty yards from the road crossing, and plaintiff "at once returned to his wagon and took hold of the rear wheel-horse," when the renewal and continuation of the whistling of the engine caused the horses to take both fright and flight, despite his efforts to control them. "His

horses were gentle, used to work, and none of them but what his little boys could drive." "His wife could drive them, and had done so often whenever it had been necessary for him to get out of the wagon." His "team was used to trains as usually operated," and had been near when "they were switching," and the horses had never been "scared before," and had been driven "at crossings several times when trains were. passing." The contention of appellant seems to be that it was negligence upon the part of the plaintiff to leave his wagon and horses. at all under the circumstances above enumerated, and that the charge of the court upon the subject does not sufficiently embrace this phase of the case. There is evidence of one witness, though not very distinct, that appellee admitted to the attending physician immediately after the injury of the wife, that when he started from the wagon in order to rescue the cattle "he put down the lines," instead of handing them to his wife, etc. This was most positively denied by the plaintiff, and he is corroborated by the testimony of Henry Gibbs, that "Mrs. Box had hold of the horses, and that Mr. Box came and undertook to hold them. He was about ten feet from his horses when they first became frightened, and was on the ground."

Upon the issue which we are now considering the court instructed the jury as follows: "Yet the law devolved upon the plaintiff the duty of exercising such ordinary care *in approaching said railway* with his family, team, and cattle as would be used by a prudent person under the circumstances; and if from the evidence you believe that he failed to exercise such care, and that thereby he contributed to the runaway of said team, then the plaintiff would be guilty of what is known in law as contributory negligence, and if you so find you will return a verdict for the defendant, although you may also believe the defendant's employes blew the whistle negligently and wantonly."

The appellant's counsel contends that the effect of the words italicized in the foregoing instruction was to limit the question of contributory negligence to the mere act of plaintiff "*in approaching* the crossing," and excluded his conduct in relation to his team and family, and in failing to remain at the wagon, etc. Now, this charge most evidently does not say nor mean any such thing. The contention of learned counsel is for a refinement of distinction which we do not think admissible in the present instance. Were we to now draw such distinction from the language used, then we would be at least reasonably certain that we would be doing something which was not done by the jury in viewing this instruction. The average jury, however intelligent, it is not believed are in the habit, when applying the law in the concrete, of viewing the judge's charge with too critical an eye, or of eagerly dissecting words and clauses like a skillful philologist, to arrive at every shade of meaning or possible application. We think the jury which rendered the verdict below understood from the language of this in-

struction, or ought to have understood, that if the conduct of the plaintiff on that occasion in reference to "his family, team, and cattle," and in managing or taking care of them, was not such as would have been that of an ordinarily prudent man under like circumstances, and that such want of care upon the part of the plaintiff contributed to the "runaway of said team," then they should return a verdict for the defendant.

It makes no difference how many different ways the question may be twisted or presented, in the end we come back to where we start, viz., the plaintiff was only bound to an ordinary care to prevent injury to his wife. To this effect the court had already instructed the jury in the general charge, and therefore it was not necessary, even if proper, to give any of the requested instructions, as has been repeatedly held under such circumstances. Some of these instructions also select certain facts, or state of facts, and declare that they would amount to negligence upon the part of the plaintiffs. This has often been held by the Supreme Court in cases like the present not to be the proper practice. Railway v. Lee, 70 Texas, 496, and authorities cited. We hold that the court did not err in refusing the special instructions embraced within the foregoing assignments, under the facts of this case and in view of the charge as given by the court below.

We do not think that the seventeenth assignment of error is well taken. The court did not err in refusing to charge, without qualification, that "if the engineer in charge of said train blew said whistle as the usual signal in approaching the station at McGregor, it was not negligence for him to blow said whistle." If this was done after the engineer became apprised (if so) of the fright of plaintiff's horses and of the probable danger to his wife or property caused by the previous whistling of the engine, then it was negligence to again sound or to continue sounding the whistle under the circumstances of this case, even to signal McGregor station. Railway v. Carson, 66 Texas, 345. Besides, the instruction was inapplicable under the evidence. The proof shows that the whistling of the engine occurred before the train had reached the usual place fixed and marked by the company for signaling the station, and the sounding of the whistle was not of that character.

We find no error in the action of the court in not allowing "the twelfth special charge asked by the defendant and made the basis of the sixteenth assignment. This instruction relates to the right of the engineer to sound the whistle in order to frighten away any cattle of plaintiff that were at or near the railway track and which the engineer might have believed were about to go upon the track in front of the approaching train. There is scarcely any proof whatever tending to support this view of the case. Still, the court in its general charge most positively instructed the jury that defendant's servants had the

right to sound the whistle, not only for the public crossing and for the intersection with another railway, but also "to give all warnings by bell or whistle rendered necessary to frighten from the track any cattle thereon or so near thereto as to endanger the train or such cattle," and that for sounding the whistle for any of the purposes above specified "the defendant can not be held responsible for any damages resulting," etc. This was sufficient, and certainly as favorable to the defendant as the law justifies, if not more so, and disposes also of the twenty-fourth assignment of error.

By the eighteenth assignment of error the appellant complains that the court erred in not charging the proper measure of damages in cases like the present, and secondly in permitting the plaintiff to recover for his own mental anguish. In regard to the first point, we think that the charge of the court was sufficient as far as it went, and if not full enough the defendant should have requested additional instructions upon the measure of damages. Touching the second point, the language of this portion of the charge does not sustain the criticism. The appellant's counsel concedes that the plaintiff was entitled to recover for the sufferings of the wife. This he recovers in her right. The language used by the court, so far as need to be stated, is to this effect: "You will find for the plaintiff for the injury to *his wife, the pain and* suffering, including mental anguish and expenses occasioned by such injury." The petition alleged only the suffering of the wife and her mental anguish. The proof was confined to her, and there is no evidence of mental anguish on the part of the plaintiff. We think that the charge fairly means the mental anguish of the wife only, and under the circumstances was so understood by the jury. Consequently they were not misled thereby to the injury of the appellant.

The nineteenth, twentieth, twenty-first, and twenty-second assignments of error deny the sufficiency of the evidence to establish the liability of the appellant. The nineteenth and twentieth present the only points that require any special consideration at our hands, and are as follows:

"19. The verdict of the jury is not supported by the evidence, in this, that the evidence fails to show that the injury was caused by the blowing of the whistle at any time when it was not necessary, or when it was negligent to blow the same.

"20. The verdict of the jury is not supported by and is against the evidence; in this, that the evidence fails to show that the engineer knew that it was unnecessary to blow the whistle, and that the blowing of the same would probably cause the injury to the plaintiff's wife."

The twenty-second assignment asserts that the evidence discloses that the injury of the wife was due to the negligence of the plaintiff. This can not be successfully maintained after the verdict in favor of the appellee, and in the light of the facts detailed in a former part of this opinion. We recur to the nineteenth and twentieth assignments.

1.   It may be conceded that it was lawful, as charged by the court, to sound the whistle for either of the crossings, or to frighten away cattle from the track, unless the danger of injuring the plaintiff's wife or those in the wagon by so doing was under the circumstances reasonably apparent to the employes in charge of the engine.   Railway v. Carson, supra.   In other words, that they knew that the horses were becoming frightened by the noise of the whistle.   This qualification, however, is not contained in the charge of the court.

But it is to be observed that the Act of 1883 materially changed article 4232 of the Revised Statutes, which required the whistle to be sounded until the crossing had been passed by the train.   Now it need only be blown "eighty rods" from the crossing, and thereafter the bell alone must be rung.   Acts 1883, p. 28.   A large number of witnesses testify that in the present instance the whistle was sounded before it had reached the crossing at that place, and repeatedly thereafter, and in a "loud, shrill, quick, and sharp" manner; and there is evidence that this continued after the horses began to be frightened.   Some of the witnesses testify that this was unusual at that place—that the whistle was sounded much oftener than had been the habit of the trains when passing that part of the railway.   Others testify that the whistling of the engine was what is known as "the stock whistle."   Nearly every one of them, however, agree that the engine whistled very loudly and a great many times, and that this continued until after the plaintiff's horses "ran away and upset the wagon."   We refer more particularly to the witnesses offered by the plaintiff.   All of them were apparently disinterested.

Defendant offered some testimony to the effect that there was no unusual amount of "whistling," etc.   There was positive proof that there were no cattle on or near the track.   The two employes of the defendant who testified assign different reasons for the soundings of the whistle, and to some extent vary in this particular.   The train was advancing rapidly, and never stopped apparently until it reached the station of McGregor, which was distant 2518 feet south from the public road crossing.   As we understand the record, it is at this station that the St. Louis, Arkansas & Texas Railway track intersects the defendant's road.

Other facts were proved tending to support the plaintiff's case, some of which we have given in treating of the issue of contributory negligence.   We conclude that the jury was justified by the facts proved in believing that the whistle of the engine was sounded oftener than was necessary or proper under the circumstances, and was negligently blown, causing the injury to the plaintiff's wife.   At least we can not hold that this conclusion is without sufficient evidence to support it.

2.   It is not necessary to now determine whether, if the engineer failed to exercise due care in ascertaining the danger to the plaintiff's

wife, and in fact remained ignorant of any such danger during the time when he sounded the whistle, the company would be liable or not under such circumstances, for the case does not appear to have been tried upon that theory in the District Court. We think it is clear, however, that, under the facts of this case, if the danger of frightening the horses and consequently injuring any of those in the wagon by sounding the whistle was reasonably apparent to the engineer, or if he knew that the horses had been already frightened, or were becoming so, on account of the noise already made by the whistle and cars, and he continued thereafter to sound the whistle and caused the injury, the defendant would be liable. Such conduct might properly be denounced as wanton, as found by the jury. There is ample evidence to support this conclusion. Facts and circumstances were proved from which the jury might well have inferred that the engineer was aware of the fright of the horses and continued thereafter to operate the engine and sound the whistle regardless of consequences. The plaintiff testified on this point, that "the engineer and fireman could see where he was and could see his wagon, horses, and cattle." The fireman, who testified for the defendant, admitted that he did see them. He was on "the tender" and saw the horses when they first "turned round" and when they "ran away." Why did not the engineer also see these occurrences? No explanation is given. Several of the passengers on the train also saw the whole occurrence. One of them testified, that "he saw the accident. Plaintiff was driving the cattle when the horses became frightened. He then went to the horses and caught them, but could not control them." The engineer was not called as a witness, and the defendant does not account for its failure to produce his evidence. Perhaps he would have admitted, as did the engineer in the case of the Railway v. Carson, supra, that "he saw that the horses were frightened," yet he moved on and continued the sounding of the whistle. This is a deduction that the jury might legitimately draw if they deemed it reasonable under the circumstances of the case. We can not, therefore, hold that the verdict of the jury is without evidence to support it, or even against the preponderance of the testimony upon this subject. Carson's Case, 66 Texas, 345; Railway v. Chapman, 57 Texas, 75.

No complaint is made of the amount of the damages as fixed by the jury at $7500. The wife of the plaintiff was most horribly maimed and mangled, though not entirely killed.

Our conclusion upon the whole case is that the judgment ought to be affirmed.

*Affirmed.*

Adopted October 20, 1891.


*J. W. Terry* argued a motion for rehearing. The motion was refused.