MISSOURI, K. & T. RY. CO. OF TEXAS v. REYNOLDS †

(Court of Civil Appeals of Texas.  April 1, 1911.  Rehearing Denied April 15, 1911.)

1. RAILROADS (§ 350*)—CROSSING ACCIDENTS—CONTRIBUTORY NEGLIGENCE—QUESTION FOR JURY.

Plaintiff, passing over a crossing occupied by several tracks, saw an engine with cars coming from the north, and hurried across around the front of an approaching engine, pulling a number of cars, when he saw another engine with cars coming from the north on another track. Not having time to cross in front of it, he stepped aside for it to pass, and, his attention being drawn to it, he failed to notice that he was standing on another track, and almost immediately he was struck by an engine coming from the south. There was a big crowd of people at the crossing, and it was about dusk. *Held*, that it cannot be said that plaintiff was negligent, as the employés on the engine were obliged to keep a lookout for persons in peril.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1169–1172; Dec. Dig. § 350.*]

2. RAILROADS (§ 301*) — CROSSINGS — RIGHTS OF PUBLIC.

The use of a street is for the ordinary travel over it, and the right of a railroad to oper-

ate its trains across it is subordinate to its use by the general public.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 956; Dec. Dig. § 301.*]

3. RAILROADS (§ 309*) — CROSSINGS — RIGHTS OF PUBLIC—DUTY OF RAILROAD.

In walking over a crossing on a sidewalk constructed for the use of pedestrians one is not a trespasser, and the railway company in operating its trains across such street is required to exercise care proportionate to the risk incident to such use of its track by the public.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 981; Dec. Dig. § 309.*]

4. RAILROADS (§ 274*)—INJURIES TO PERSONS AT STATIONS.

Where plaintiff was going to defendant's depot for a lawful purpose, and in crossing a walk over several tracks to reach it, was struck by an engine on one of the tracks, he was not a trespasser.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 868–872; Dec. Dig. § 274.*]

5. RAILROADS (§ 312*)—CROSSINGS—MEANS OF CONTROLLING ENGINES.

Where several tracks crossed a much-used street leading past a depot, and trains were constantly passing over the crossing, and there was continuous noise and confusion, the hazard was so great as to require that an employé be stationed on the footboards of switch engines, and be provided with means to at once turn on the lever to the angle cock to stop the engine in case of emergency requiring immediate stoppage to prevent injury.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 988–1003; Dec. Dig. § 312.*]

6. RAILROADS (§ 348*)—CROSSING ACCIDENT—ACTS IN EMERGENCY—EVIDENCE.

In an action for injuries to a pedestrian at a crossing, evidence *held* not to show such excitement on the part of an employé on the engine whose duty it was to turn the angle cock to stop the engine so as to excuse his failure to use ordinary care.

[Ed. Note.—For other cases, see Railroads, Dec. Dig. § 348.*]

7. RAILROADS (§ 320*)—DUTY AS TO PERSONS IN PERIL.

When the employés of a railway company discover a person on the track in a position of peril, whether rightfully or wrongfully there it is their duty to use all the means at hand to avoid injury; hence, where plaintiff was caught between tracks at a crossing and struck by an engine, it was not error for the court to require of defendant's employés the exercise of ordinary care, and good faith therein is not sufficient.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1014–1019; Dec. Dig. § 320.*]

8. RAILROADS (§ 351*)—INJURIES AT CROSSINGS—INSTRUCTIONS.

In an action for injuries at a crossing occupied by several tracks, where it appeared that plaintiff was struck by an engine while his attention was attracted by a train on another track, an instruction that if it was reasonably apparent to defendant's employés, and they believed, that plaintiff would probably not leave the track before the engine reached him, and if they realized his peril in time to have avoided injuring him, and if they failed to use such care with the means at hand as ordinarily prudent persons would have done under like circumstances, and if they were negligent on account of such failure, and such negligence was

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes
† Writ of error denied by Supreme Court.

the proximate cause of the injury, they should find for plaintiff, was not erroneous as to defendant, as ordinarily it is sufficient for the court to tell a jury that a failure to use such care as a prudent person would have used under the same or similar circumstances would constitute negligence.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1193–1215; Dec. Dig. § 351.*]

9. RAILROADS (§ 351*)—ACCIDENT AT CROSSING —INSTRUCTIONS.

In such case an instruction that, on the other hand, if the employés on the engine had realized that plaintiff was in a perilous position, and that he would probably not get off the track in time to avoid being struck by the engine, or if the employés saw plaintiff and realized his danger and peril, and it reasonably appeared to them, and they believed, that he would probably not get off the track, before the engine would reach him, yet if when such employés realized plaintiff's perilous position, they could not in the exercise of ordinary care, by the use of means which they had at hand avoid injuring plaintiff, or if they exercised ordinary care and used all the means they had at hand to avoid the injury, then in any of these events the finding must be for defendant, was correct.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1193–1215; Dec. Dig. § 351.*]

10. TRIAL (§ 260*)—INSTRUCTIONS—REQUESTS —REPETITION.

A requested charge which is included in the charge as given by the court is properly refused.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 651–659; Dec. Dig. § 260.*]

11. RAILROADS (§ 351*)—INJURIES AT CROSSING—INSTRUCTIONS.

Where the evidence showed that plaintiff while waiting at a crossing for a train to clear the crossing, was oblivious of the approach of a train on the track on which he was standing, and that the employés on the latter train saw plaintiff's peril and could have avoided injuring him, an instruction requested by defendant that the duty to exercise ordinary care to prevent injury to a person on the track arises only when the trainmen know of his presence and realize his danger, was properly refused, as inapplicable to the facts.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1193–1215; Dec. Dig. § 351.*]

12. RAILROADS (§ 351*)—INJURIES AT CROSSINGS—INSTRUCTIONS.

In an action for injuries at a crossing where plaintiff was caught between tracks and run down by an engine, it was not error for the court to refuse an instruction requested by defendant that if plaintiff was standing on the track in front of a switch engine and the employés on the engine used such means as they deemed adequate and sufficient under the circumstances to prevent injuring him, the verdict should be for defendant, as it would have permitted the jury to find for defendant, notwithstanding such employés might have failed to use that degree of care which should have been employed by persons of ordinary prudence under the particular circumstances, and left it to the employés to determine what means were adequate and sufficient to prevent the injury.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1193–1215; Dec. Dig. § 351.*]

13. RAILROADS (§ 348*)—INJURIES AT CROSSINGS—EVIDENCE.

In an action for injuries at a railroad crossing, evidence *held* sufficient to support a verdict for plaintiff.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1138–1150; Dec. Dig. § 348.*]

14. DAMAGES (§ 132*)—INJURIES AT CROSSINGS—EXCESSIVE DAMAGES.

$12,500, *held* not excessive for injuries at a railroad crossing.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 357–385; Dec. Dig. § 132.*]

Appeal from District Court, Grayson County; B. L. Jones, Judge.

Action by C. T. Reynolds against the Missouri, Kansas & Texas Railway Company of Texas. From a judgment for plaintiff, defendant appeals. Affirmed.

See, also, 115 S. W. 340, 122 S. W. 531.

Coke, Miller & Coke and Head, Dillard, Smith & Head, for appellant. Wolfe & Maxey, for appellee.

BOOKHOUT, J. Appellee sued appellant for damages for personal injuries. He recovered judgment for $12,500 on a trial by jury. Defendant appealed. A further statement of the case is shown in the opinion of this court on the former appeal (115 S. W. 340), and the opinion of the Supreme Court (122 S. W. 531).

It is assigned that the court erred in giving the third paragraph of the main charge to the jury, which is as follows: "If you believe from the evidence that on the occasion in question the employés of the defendant on the switchboard of the engine that is alleged to have struck plaintiff saw plaintiff standing on defendant's track in such position as that he was in danger of being struck by said engine, and if you further believe from the evidence that it reasonably appeared to said employés, and they believed, that plaintiff would probably not leave the track and get out of the way of the engine before it reached him, and that said employés realized the perilous situation of plaintiff in time by the use of means they had at hand to have avoided striking and injuring plaintiff, and if you further believe from the evidence that said employés failed to use such care in the use of the means, if any, they had at hand, to avoid striking and injuring plaintiff as an ordinarily prudent person would have used under the same or similar circumstances, and if you further believe from the evidence that in such failure, if any, said employés were guilty of negligence as that term has been hereinbefore defined, and if you further believe from the evidence that such negligence, if any, was the direct and proximate cause of plaintiff's injuries, then you will find for the plaintiff, and assess his damages under instructions hereinafter given you."

It is insisted that this charge was error, in that it required of defendant's employés the use of ordinary care to prevent injuring plaintiff after discovering his peril, although the evidence tended to show that they were excited and to some extent unnerved and agitated over the dangerous condition in which plaintiff had placed himself under cir-

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

cumstances indicating that plaintiff was guilty of negligence, and that plaintiff's perilous position was not occasioned by any negligence of defendant. Where such are the facts, or the evidence tends to show that such are the facts, it is error for the court to require of the defendant's employés the exercise of ordinary care at all hazards to avoid injuring plaintiff, regardless of whether or not his dangerous situation so frightened and unnerved them as that they were not in a position to use ordinary care. In such case good faith is all that should have been required of their actions. We do not concur in this contention. The business part of the city of Denison is west of appellant's depot. Main street runs east and west and appellant's tracks run north and south. Coming from the main part of the city to appellant's depot, you would have to cross nine tracks, and you would cross four of these before you reached the lead track upon which the accident occurred. Appellee testified: That at the time he was injured he had started to the depot to see what time he could get a train home. He was walking on Main street going east and on the north side of the street on the sidewalk constructed of planks. That after passing over some of the tracks he saw an engine coming from the north, pulling some cars, and he hurried across this track around the front end of the engine, when he discovered another engine pulling another string of cars coming from the same direction, and, not having time to get across the track ahead of it, he stopped to permit it to pass. This last train was between him and the depot where he was going. His attention was attracted to that train, and he was waiting to permit it to go by so that he could pass on to the depot, and was looking at it, and, when he had not stood there hardly an instant, another engine coming from the south struck and injured him. He thought he had stopped at a point between, and not on, the tracks. Mr. Nortrip, one of appellant's employés on the footboard of the engine which struck plaintiff, testified that the accident happened just about dusk, and there was a big crowd around there. He further testified: "The company provides a watchman to watch for people on that crossing." Mr. Volker, one of appellant's switchmen, testified: "The tracks are laid there, two rails composing a track, and then there is some space left there, a little more than there is between the rails. There are boards along there on the walk running east and west across there; the boards being about even with the tops of the rails. The depot is east of the tracks, and the main part of the city is west of them, and there are a great many people passing almost constantly going to and from that depot." Judge Halsell testified that he is familiar with the conditions surrounding the point of the accident, the location of the street, the Union Depot, and the tracks across the street; that the travel from the main part of the city to the Union Depot was along the sidewalk running east and west on the north side of Main street; that the passenger trains of the Missouri, Kansas & Texas Railway Company, St. Louis & San Francisco Railroad Company, and the Houston & Texas Central Railroad Company all left from this Union Depot. The employés on the footboard, to wit, Mr. Nortrip, said he halloaed at appellee to get off the track when they were 15 or 20 feet from him. Mr. Thomas said at the time he first noticed appellee he was standing on the track, probably 20 feet ahead of the engine. Mr. Peters testified: "I saw the plaintiff, Reynolds. When I first saw him, he was just starting across what is known as the lead track. That was the track that our engine was on. I don't remember exactly, but I think he was just about the middle of the crossing when I first saw him, and he was on the north side. I can't hardly remember just how far we were. When I first saw him, he was just starting across the lead track. To the best of my recollection, the distance that I was from him when I first saw him, I believe, would be about maybe 30 feet. He stopped inside the east rail of the lead track and was looking east, and not toward our engine." The evidence shows that Reynolds was wholly unconscious of his perilous position when first seen by appellant's employés riding on the footboard, and that said employés saw him and discovered his peril when they were from 15 to 20 feet from him, and could, in the exercise of ordinary care in the use of the means at hand, have stopped the engine before striking him.

[1] We are not prepared to hold that appellee was guilty of negligence in being where he was at the time of the accident. Appellant was backing its engine, drawing a string of cars, over a much-used crossing in a populous city. Its employés were bound to keep a lookout for persons whose lives might be endangered. Railway Co. v. Pendery, 14 Tex. Civ. App. 60, 36 S. W. 794; Hargis v. Railway Co., 75 Tex. 23, 12 S. W. 953.

[2, 3] It is held that the "use of a street is for the ordinary travel over it; and the right of a railroad to operate its trains across it is subordinate to the use by the general public." Railway Co. v. Carson, 66 Tex. 347, 1 S. W. 107. If it should be thought that Judge Robertson, who delivered the opinion in that case states the law too strongly in favor of the public, it must be admitted that in using the street by walking over a sidewalk constructed for the use of pedestrians one is not a trespasser, and that the railway company in operating its trains across such street is required to exercise care proportionate to the risk incident to such use of its track by the public. Lewis v. Railway Co., 73 Tex. 507, 11 S. W. 528.

[4] That appellee was lawfully on the side-

walk at a point where it crossed the lead track there can be no question. There were no circumstances from which a reasonable mind could conclude that he was negligent in the manner in which he was exercising that right. He was going to appellant's depot for a lawful purpose. An engine and cars coming from the north was about to intercept his progress, when, by hurrying his pace, he passed in front of it only to find his passage blocked by another engine drawing a string of cars on another track also coming from the north. He was compelled to halt. He thought he had stopped at a point between, and not on, the tracks. He was not loitering. An instant later he was struck by the engine coming from the south. It was about dusk, and there was a big crowd at the crossing. Appellee's conduct was entirely consistent with due care when we take into consideration the confusion and noise attending his efforts to reach the depot.

[5] Taking into consideration the circumstances, the crowded condition of the street, the constant presence of persons going to and from the depot along the walk, the number of trains and consequent noise and confusion, all of which was known by appellant, as is shown not only by its use of the street, but by its act in employing a watchman at the crossing, we think the hazard was so great as to require that one of the employés on the footboard should have been prepared to at once turn on the lever to the angle cock and stop the engine.

[6] We do not think the evidence shows such excitement on the part of Thomas, whose duty it was to turn the angle cock, as to relieve him from the duty to use ordinary care to do so. Thomas testified as follows: "I presume I was excited some; not very much; not at the first instant I saw him. I don't know as I got excited at all to speak of. Possibly I got some excited, too. I was excited possibly to a certain extent when I reached for the angle cock, I presume. Yes; I am certain whether I was or not. I was. I was excited because the man didn't make any attempt to get off the track. No; I didn't think then we would run over him and cut him to pieces. We were getting pretty close to him. That was what excited me. As soon as I halloaed at him and noticed that he didn't step off, that was the time I was excited, if I was excited at all to speak of. After I halloaed, I noticed that he didn't step off. I expect I was a little excited then and tried to get hold of the angle cock. Whether I was a little excited or not I halloaed at him and expected him to get off the track, and he didn't get off and I thought he didn't hear me, and then I concluded to use the angle cock."

[7] Appellant contends that it was error "for the court to require of defendant's employés the exercise of ordinary care," and that "good faith is all that should have been required of their action." We do not concur in this contention. It has always been held by our courts that when the employés of a railway company discover a person on the track in a position of peril, whether rightfully or wrongfully there, it is their duty to use all the means at hand to avoid injury. Railway Co. v. Breadow, 90 Tex. 30, 36 S. W. 410; Railway Co. v. McMillan, 100 Tex. 562, 102 S. W. 104; Railway Co. v. Wallace, 21 Tex. Civ. App. 394, 53 S. W. 79; Railway Company v. Harvin, 54 S. W. 631; Railway Co. v. Hendricks, 49 Tex. Civ. App. 314, 108 S. W. 750.

[8] In the charge complained of the jury was told (1) if it was reasonably apparent to the employés and they believed appellee would probably not leave the track before the engine reached him, (2) and if they realized the perilous situation of appellee in time by the use of the means at hand to have avoided injuring him, (3) and if the employés failed to use such care in the use of the means they had at hand to avoid injuring appellee as an ordinarily prudent person would have employed under the same or similar circumstances, (4) and if they further believed from the evidence that in such failure said employés were guilty of negligence, (5) and that such negligence was the proximate cause of the injury, they should find for appellee. Ordinarily it is sufficient for the court to tell a jury that a failure to use such care as a person of ordinary prudence would have used under the same or similar circumstances would constitute negligence. This would have been all that the law demanded in this case. The court went further, and required the jury to find, not only that said employés failed to use such care as would have been exercised by an ordinarily prudent person under the circumstances, but that their failure to use such care was negligence. Counsel say appellant's employés "were excited and to some extent unnerved and agitated." This, if true, was a circumstance to be considered by the jury in determining whether under the particular facts appellant's employés had acted as ordinarily prudent men, and also whether, as submitted by the court, their failure to so act, if they did fail, was negligence. We are of opinion the court's charge was correct.

[9] Nor did the court err, as is contended by appellant, in its second assignment of error in the fourth paragraph of its charge, reading as follows: "On the other hand, if you find and believe from the evidence that the said employés of defendant on said engine did not realize that plaintiff was in a perilous position, and that he would probably not get off the track in time to avoid being struck by the engine, or if you believe from the evidence that said employés saw plaintiff and realized his danger and peril and that it reasonably appeared to them and they believed that he would probably not get off the track before the engine would reach

him, yet if you further believe from the evidence that when said employés realized plaintiff's perilous position, and if you find they did, they could not, in the exercise of ordinary care by the use of means they had at hand, avoid injuring plaintiff, or if you so believe that said employés exercised ordinary care to use all the means they had at hand to avoid injuring plaintiff, then in any of these events you will find for defendant."

There was no error in refusing appellant's requested instruction No. 5, reading as follows: "The duty to exercise ordinary care to use the means at hand to prevent the injury of a man on the track of a railroad does not arise to the employés operating an engine on such track and approaching such man from the discovery of a man on the track, but only arises when it is discovered and realized that the man on such track will not get off of same in time to avoid injury."

[10] This charge was fairly covered in the court's charge in so far as it embraces a correct proposition of law.

[11] It in effect seeks to have the jury instructed that the duty of appellant's employés to stop the engine did not arise until they discovered that appellee would not get off the track, and this, under the facts, would have been error, as the employés on the footboard, when they discovered appellee on the track, saw his peril, and that he was oblivious of the approach of the engine and that he was making no effort to get off the track, it then became their duty to exercise ordinary care to make use of the means at hand to avoid injuring him. Railway Co. v. Reynolds, 122 S. W. 532; Railway Co. v. Scarborough, 104 S. W. 412.

The court did not err in refusing appellant's requested charge No. 7, which is as follows: "Where the employés in charge of a switch engine discover a man on the track in front of such switch engine, and realize that he is in peril, then it is their duty to exercise ordinary care to use any and all means at their command which are deemed adequate, necessary, and sufficient to prevent injuring him, and if they exercise such care, and the person on the track is injured, there will be no liability upon the part of the railway company. If you believe from the evidence that plaintiff was standing on the track of defendant in front of a switch engine, and that the employés in charge of such switch engine endeavored to prevent injuring him, and used such means as they deemed adequate and sufficient under the circumstances to accomplish that purpose, you will return a verdict in favor of defendant."

[12] This charge by the use of the language, "used such means as they deemed adequate and sufficient under the circumstances," would have permitted the jury to find for appellant, notwithstanding such employés might have failed to use that degree of care which should have been employed by persons of ordinary prudence under the particular circumstances. In this respect this special charge did not announce a correct proposition of law. Again, the charge left it to the employés to determine "what means were adequate and sufficient" to prevent the injury, and in this respect was not correct.

There was no error in refusing appellant's requested charge No. 8, reading as follows: "If you believe from the evidence that plaintiff was on the tracks of defendant's railway in front of a switch engine, and that certain employés of defendant on the footboard of such engine saw and realized plaintiff's perilous position and made an effort to stop the engine, or used other means to prevent injuring him, but by reason of excitement and agitation they failed to accomplish their purpose, you will return a verdict in favor of defendant." The court had already instructed the jury as to what the law required of appellant's employés, and to have given this requested charge would have but tended to divert the minds of the jury from the rule already laid down by the court, and left them without any legal standard by which to determine whether they had acted as ordinarily prudent persons similarly situated should have acted.

[13, 14] There was evidence sufficient to support the verdict, and we are not authorized to say the same is excessive.

The assignments not discussed do not present reversible error, and the same are overruled.

The judgment is affirmed.