CARSEY v. HAWKINS.

(Court of Civil Appeals of Texas. Dallas. June 3, 1911. Rehearing Denied April 4, 1914.)

1. HIGHWAYS (§ 184*)—ANIMALS FRIGHTENED BY AUTOMOBILES—CONTRIBUTORY NEGLIGENCE—SUFFICIENCY OF EVIDENCE.

Evidence, in an action for the death of one mule and injury to another from a runaway caused by fright at an automobile negligently operated by defendant along the public highway, held insufficient to show that plaintiff's son, who was in charge of the mules, was guilty of contributory negligence, barring recovery.

[Ed. Note.—For other cases, see Highways, Cent. Dig. §§ 471–474; Dec. Dig. § 184.*]

2. HIGHWAYS (§ 181*)—ANIMALS FRIGHTENED AT AUTOMOBILE—NEGLIGENCE—LIABILITY.

Where a person operating an automobile along a public highway, after seeing that a team of mules indicate fright and are liable to run away, increases the speed of the car, and thereby causes a noise which is calculated to and does frighten the mules, he is liable for the resulting damages.

[Ed. Note.—For other cases, see Highways, Cent. Dig. § 469; Dec. Dig. § 181.*]

3. HIGHWAYS (§ 181*)—ANIMALS FRIGHTENED BY AUTOMOBILE—NEGLIGENCE—ANTICIPATED INJURY—DEFENSE.

Where the operator of an automobile, at the time he negligently frightened a team of mules, causing them to run against a tree, whereby one was killed and the other injured, must have known that some injury would result to them, he could not avoid liability on the ground that the particular injury could not have been anticipated.

[Ed. Note.—For other cases, see Highways, Cent. Dig. § 469; Dec. Dig. § 181.*]

Bookhout, J., dissenting.

Appeal from Hunt County Court; J. W. Manning, Judge.

Action by J. A. Hawkins against John M. Carsey. From a judgment for plaintiff, defendant appeals. Affirmed.

See, also, 163 S. W. 586.

Looney, Clark & Leddy, of Greenville, for appellant. Evans & Carpenter, of Greenville, for appellee.

RAINEY, C. J. The appellee brought this suit against appellant to recover damages on account of the death of one mule and injury to another, which resulted from the running away of said mules, and which runaway was caused from fright at an automobile, which was negligently operated by appellant along a public highway. Defendant pleaded a general denial, and upon a trial before the court, without a jury, judgment was rendered for plaintiff, and the defendant appeals.

[1] The evidence shows that appellant, with his wife, was traveling in an automobile along a public road, running north. This road intersects a public road running east and west, where appellant continued his journey westward. There was a culvert at said intersection, and as appellant approached it he slowed up, and after crossing it he increased the speed of the machine, which made a noise not unusual when starting up speed, but which some of the witnesses designated a "terribile noise." Near the intersection of these roads Henry Hawkins, 17 years of age, a son of appellee, had been working a pair of mules, hitched to a grader, a short distance west of said intersection, had unhitched them from the grader, and had driven them to one side of the road, and they were about 30 feet from the road when the automobile passed them. When the machine crossed the culvert the mules were in full view of appellant; the mules began to indicate fright and to cut up, which was seen by appellant. He increased the speed of his machine making the "terrible noise," causing the mules to break loose from the boy. They ran one on either side of the tree, and, the harness being too strong to break, one of the mules' neck was broken, and the other badly injured. The appellant had placed some dogwood branches with blooms on them in his auto, which extended a short distance above the auto. Young Hawkins testified in reference to the cause of the mules running away as follows: "Well, the noise, the size of the thing, and all; of course they could see them things, and the rattling, I guess." Also: "Well, I didn't think about the mules getting scared. I would have drove them away if I had thought about them getting scared. I had time to get back out of the way. Could have got back out of the way," behind the schoolhouse, which was 65 feet away, but thought he had them under control. There was testimony that the auto was seen coming about 200 yards away, and that Hawkins had to hurry to get out of the way of the auto.

[2] Appellant contends that the evidence is insufficient, in that it shows there was no negligence on the part of appellant; that appellee was guilty of contributory negligence, and that the injury could not have been anticipated by appellant. It was lawful for the appellant to operate his machine along the public highway. It was also lawful for young Hawkins to have the mules where he did, and it was the duty of both to use care the appellant not to scare the mules and cause them to run away, and young Hawkins to control his team and prevent them, if possible, from running away. The evidence, we think, justified the court in holding the appellant guilty of negligence in increasing the speed of the machine and allowing it to make the noise it did, which frightened the mules and caused them to run away. He saw that the mules indicated fright and were liable to run, and the court was warranted in

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

holding that increasing the speed and making the noise was an act of negligence which should not have been committed. The evidence shows no necessity for increasing the speed at that point which caused the noise, as the machine with the accompanying noise, was calculated to frighten the mules. It was his duty to desist from moving forward, to prevent frightening the mules, if necessary, at least for a sufficient time for the mules to have been moved to a safe distance.

We think the rule applicable here that applies to the operation of railway engines. It is held in railway cases that the company will be held liable for injuries if the servants, by ringing the bell, blowing the whistle, or causing steam to escape, causes a team to run away if at the time such noise was made the employés knew, or have "reason to believe that it would probably frighten said team, and that injury might result" therefrom. Railway Co. v. Spence, 32 S. W. 329; Railway Co. v. Box, 81 Tex. 670, 17 S. W. 375; Railway Co. v. Carson, 66 Tex. 345, 1 S. W. 107; Railway Co. v. Hamilton, 66 S. W. 797.

[3] We do not think the position that appellant could not anticipate the injury is well taken. It cannot be said that no injury could be anticipated from the mules running away. They were yoked together by double harness, with some timber not far distant, and it was probable some injury would result to them by becoming frightened and running away. The rule in such cases is not that the particular injury could be anticipated, but that some injury might be anticipated under such circumstances.

The trial court having held that there was no contributory negligence on the part of young Hawkins, we are not inclined to hold differently, as the evidence does not show the appellee guilty of negligence.

The judgment is affirmed.

BOOKHOUT, J. (dissenting). I regret that I am unable to concur with my brethren in the conclusions reached by them in this case. While the amount involved is small, owing to the importance of the questions raised by the appeal, I deem it proper to state my views thereon.

The evidence is insufficient to sustain a finding that the automobile was equipped in a manner reasonably calculated to unnecessarily frighten animals along and upon the highway, as alleged in the petition; and the evidence shows that the mules were not on or along the highway at the time they took fright and ran away. L. S. Green, a witness for plaintiff, testified: "The automobile looked like it had some dogwood bushes or something of that sort on it; they were sticking up, well, hanging over, around mostly, and I believe it was dogwood blooms that he had in there, some kind of decoration on it, and as the automobile turned around the corner there these branches were flopping up and down like." Henry Hawkins for plaintiff, testified: "It had some branches on it; I don't know about how many branches it had; as well as I remember there was just one on each side, looked like several little bushes on each branch; they had some blooms, and they were standing up straight." Will Hedrick testified: "There were a lot of branches in the automobile * * * just in between the seats." Appellant Carsey testified: "We had nothing in the car except some flowers, a dogwood branch or limb, with some blooms on it, the limb was possibly as long as this desk here, and approximately as wide as this desk [indicating desk in courtroom]; the limb was laying up across this way [indicating], across the back seat and then extended down under the footboard of the car, and the limb was not sticking above the top of the car over 6 inches; it was a dogwood limb, with some branches on it and blooms on it." Mrs. Carsey testified: "There was Mr. Carsey and myself in the car, and we had some dogwood branches in the car; they were in bloom and extended from one seat back to the other, from the front seat to the back seat; one end of the branches was placed on the front seat, and the other went as far back as the back seat, they went back to the top part of the car and extended over the top a little there; I don't know just how large they were; it was a limb cut off of a tree, and we were taking it home for the children, one of the little girls."

There is no evidence in the record that the dogwood branches in the car frightened the mules. The majority opinion states "that when the machine crossed the culvert the mules were in full view of appellant, the mules began to indicate fright, and to cut up, which was seen by appellant." This finding does not show that at that time the mules were in peril. The mules were not at that time on the highway. Henry Hawkins, who had charge of the mules, testified: "I had them driven out of the road about 10 minutes, I suppose when the automobile came along; I could not say just exactly how long I stood there; after I drove them out of the road I stood there and tried to hold them, when I got them out of the road just stopped them there; the team was headed down the road. The automobile was coming down the road, I guess, 200 yards; it was about 200 yards, or maybe further, from the corner coming up the road when I got the mules turned around, and from that time until the automobile got there, I just stood there and held the mules." He had ample time to take the mules out of the way, and in a safe place, had he desired to do so. His father, the plaintiff, himself, saw where he had the mules while the automobile was coming, and "thought they were out of danger." When the car passed over the culvert the mules were beginning to shy, the witness Green

says, but the boy "had them under control." Carsey swears that the young fellow was apparently trying to drive the mules towards the car, and "seemed to have them under control." No signal was given for the car to stop, slow up, or otherwise. Had it been given, the car could have been stopped in two or three feet. The car made no noise not ordinarily incident to the operation of such a vehicle under the circumstances. It was neither alleged nor proved that the automobile was running at an unlawful or excessive rate of speed. After having slowed up in passing over the culvert, it began to run faster, and made what is termed in the opinion, a "terrible noise." The evidence shows that the noise was not unusual, or any greater than is usually made after the car has been slowed up and then started off again. If the rule announced in the opinion of the court is to control in the operation of an automobile, then when the person operating the same sees one ploughing in a field, along the side of the road, and his animals are "cutting up" or showing fright, he should stop his car, even though not requested to do so, or assume the risk of such animals breaking loose and running away and injuring themselves. This the law does not require. The statute recognizes the right to operate automobiles upon the highway. Gen. Laws. 1907, p. 193. Section 5 of the act provides that "any person driving or operating an automobile or motor vehicle shall at the request, or signal by putting up the hand, or by other visible signal from a person riding or driving a horse or horses or other domestic animal, cause such vehicle or machine to come to a standstill as quickly as possible and to remain stationary long enough to allow such animal to pass." I am of the opinion that under the facts no actionable negligence was shown on the part of appellant. Acts 1907, p. 193; Eichman v. Buckheit, 128 Wis. 385, 107 N. W. 325, 8 Ann. Cas. 435.

The rule that in the operation of steam railway cars, where the engineer sees animals on the track, or about to be driven thereon, and discovers their peril, it is his duty to refrain from ringing the bell, blowing the whistle, or causing steam to escape if he knows, or has reason to believe, that it would possibly frighten such animals, causing injury to result therefrom, does not apply. There is no discovered peril in the case. The mules were not in the road, but from 30 to 119 feet from the nearest point the car would pass. They were unhitched from anything, and in charge of one apparently competent, who had chosen the place where they stood as a safe place to await the passing of the car. He had seen the car pass these mules going south a few hours before, and knew their disposition and was familiar with the noise automobiles make. His father, the plaintiff, and the owner of the mules, "thought they were in a safe place." There is a large open scope of prairie around the schoolhouse, and these mules were away from the road and on the prairie hitched to nothing, and being held by one who had been working them to a road grader. Though they appeared to be somewhat frightened as the automobile approached, the boy had them under control. No effort was made to drive them further away. No signal was given to stop the car, and the mules did not whirl and run until the automobile got about opposite them, according to plaintiff's witness, and, according to defendant, not until after it had passed. Under these facts, can it be assumed, with reason, that the driver of the car could reasonably foresee that, to continue along the public highway, where he had the lawful right to travel, making only the noise ordinarily incident to the operation of the car: (1) The mules would run; (2) that they would break away and get loose from their driver, who gave no signal to stop or otherwise, and appeared to have them under control; (3) that they would continue to run until they came to a tree several hundred feet away; and (4) that they would then run on each side of it and one of them get killed? I think not. As said by Chief Justice Gaines in Bigham Case, 90 Tex. 227, 38 S. W. 164: "Nothing short of prophetic ken could have anticipated" such a result. Can it be said that a span of mules, with harness on, but hitched to nothing, and being held by their driver in an open prairie, field, lot, or pasture, are in "peril" merely when frightened at a lawful vehicle approaching in a lawful manner? Where was the peril? They were gentle mules. They had seen the car a few hours before. They were out of the road in the open prairie. Could any reasonable man assume, even if they broke loose and ran, that they would run away from the prairie into the timber and astraddle of a tree and thereby be hurt? And this, too, in the face of the fact that their custodian who knew their disposition gave no sign of danger whatever, but awaited the passing of the car. To so hold is to stretch the doctrine of discovered peril far beyond the breaking point and defeat the very purpose of the statute requiring a car to stop when a signal is given. In my opinion the appellant could not have anticipated that in starting his car up after having crossed the culvert, making no more noise than a car usually makes under such circumstances, the appellee's mules would break loose from their driver, run away, and run on different sides of a tree, causing the death of one and injury to the other. Railway v. Bigham, 90 Tex. 227, 38 S. W. 162; Seale v. Railway, 65 Tex. 274, 57 Am. Rep. 602; Brush Elec. Co. v. Le Fevre, 93 Tex. 607, 57 S. W. 640, 49 L. R. A. 771, 77 Am. St. Rep. 898; Railway v. Welch, 100 Tex. 121, 94 S. W. 333; Prokop.

v. Railway, 34 Tex. Civ. App. 520, 79 S. W. 101.

I am of the opinion the judgment should be reversed, and judgment here rendered for appellant.