BENJAMIN F. WILLIAMS, APPELLEE, V. CHICAGO, BURLINGTON & QUINCY RAILWAY COMPANY, APPELLANT.*

FILED APRIL 4, 1907. No. 14,706.

1. Railroads: LIABILITY FOR INJURIES. Ordinarily a railroad company is not liable for injuries caused by a team taking fright at the noises incident to the ordinary operation of a train on its road.

2. ———: ———. But, where the conditions are such that noises thus made would endanger a person at a public crossing, which result could be avoided by temporarily staying or suspending the noise without materially interfering with the due operation of the train, ordinary care and prudence require that it be thus stayed or suspended until the danger is past.

3. ———: ———. To turn on the steam of a locomotive standing at a public street crossing, without warning and without taking due precautions to discover whether there is any person on or near the crossing liable to be injured in consequence of such act, constitutes actionable negligence, in the absence of special circumstances justifying the act.

4. ———: ———. A train standing at a public crossing has no precedence over an ordinary traveler, their rights being equal. Each is bound to act with due regard to the other, and has a right to assume that the other will be controlled by such considerations as would influence the conduct of a man of ordinary care and prudence.

---

* Rehearing denied. See opinion, p. 701, *post.*

APPEAL from the district court for York county: ARTHUR J. EVANS, JUDGE. *Affirmed.*

*J. W. Deweese, F. E. Bishop* and *F. C. Power,* for appellant.

*Gilbert Bros., contra.*

ALBERT, C.

This is an appeal from a judgment in favor of the plaintiff in an action brought to recover for injuries received by him in consequence of the team, drawing the wagon in which he was riding, taking fright at the escape of steam from one of the defendant's locomotives standing at a street crossing. At the close of the testimony, the defendant moved for the direction of a verdict in its favor. The motion was overruled, and the ruling on that motion is the basis of the only assignment argued in the brief filed on behalf of the defendant company. The question raised by the assignment relied upon is whether the evidence, tested by the rules of law applicable thereto, is sufficient to sustain the verdict.

The crossing in question is on one of the principal streets in the city of York. Six railroad tracks of the defendant company cross the street at this point. The street is 100 feet wide, runs north and south, and the tracks cross it nearly at right angles. From the center of the street the crossing is planked for a distance of about 15 or 16 feet each way. There is an ordinary sidewalk at each side of the street. The rest of the crossing is neither planked nor filled in, the rails projecting above the surface of the street about four inches. On the date of the accident the plaintiff and his brother approached the crossing from the south, in a wagon drawn by a team of mules. One of the defendant's locomotives, to which was attached four or five freight cars, stood near the east line of the street, facing west. There is some conflict in the evidence as to whether the locomotive, or any part of it

stood on the street, the plaintiff and one other witness testifying that the pilot was even with the east line of the planking on the crossing, and witnesses produced by the defendant testifying that the locomotive stood east and entirely clear of the street. There is also some conflict as to the time it had stood at the crossing, but the evidence would warrant a finding that it was at least five minutes. The plaintiff and his brother, as they approached the crossing, and at a distance of about six blocks from it, saw the locomotive standing on the track, and it was in plain sight all the time. At a short distance from the track they "slowed up," or stopped for an instant, to consider whether it would be safe to cross in front of the locomotive. They saw or heard nothing to indicate that the locomotive was about to move, and received no warning that it was about to do so. They saw others crossing, and started to drive across the tracks. The engineer could not see them from his side of the cab, but the fireman, from the other side of the cab, might have seen them, if he had been looking. His testimony was not taken. When the mules had got about in front of the engine, the engineer turned on the steam to back the train. This caused considerable noise, and the team took fright and started in a northwesterly direction, which brought the wagon wheels in contact with the rails of the unplanked portion of the crossing. What followed is shown by the following, taken from the plaintiff's testimony: "The team started with us. My brother was driving, and I took hold of the lines too, and the team ran out over those unprotected rails, and the wagon was just bouncing up and down, and we came to the sewer that goes under the railroad and the team would not go over that hole. They turned and ran over a kind of guard they have there by the sidewalk,—old ties with planks spiked on top of these ties. When we struck these planks, about 18 inches high, it just shot us into the air 15 or 20 feet, and we came over on our heads. At that time the wagon was gone from where we were."

That the accident resulted in more or less injury to the

plaintiff is not disputed. The evidence also shows that the engineer turned on the steam in response to a signal from one of the train men to back the train, and that the escape of the steam with the consequent noise was merely incidental to the usual and ordinary operation of the engine. The evidence, however, is sufficient to sustain a finding that, while the plaintiff was crossing the track in front of the defendant's engine, which was occupying a portion of the public street, the defendant's employees, without any warning and without any precaution to guard against consequent injury to those using the street, turned on the steam, thereby causing a noise, which, by common experience, is known to be highly calculated to frighten teams passing in front of an engine, and, in consequence, the plaintiff sustained serious bodily injury. This, in our opinion, sustains the charge of negligence.

We have not overlooked the general rule applied in *Hendricks v. Fremont, E. & M. V. R. Co.*, 67 Neb. 120, to the effect that a railroad company is not liable for injuries caused by a team taking fright at the ordinary operation of a train on its road. While that rule is generally recognized by the courts, we know of no case where any court has shown a disposition to depart from the humane doctrine that a person must conduct his business with due regard for the safety of others. Noise is an unavoidable incident to the operation of railroad trains. But, where the conditions are such that the noise incident to the movement of a train or engine would endanger those lawfully near the track, and could be temporarily stayed or suspended without materially interfering with the due operation of the road, ordinary prudence and a due regard for the rights and safety of other people demand that the noise be prevented or suspended until the danger is past. This is clearly implied in *Omaha & R. V. R. Co. v. Brady*, 39 Neb. 27. In that case, as in this, a team took fright at the escape of steam from an engine, and in the body of the opinion the court said: "If the facts, circumstances, and situation of the parties had been such at the time this

steam escaped as to make it the duty of the engineer to be aware of Brady's presence, then the engineer's act of opening the valves would have been evidence of negligence for the jury's consideration." In *Omaha & R. V. R. Co. v. Clark*, 39 Neb. 65, the same question was under consideration, and the court, in the course of its discussion, said: "In the legitimate conduct of its business it had a right to discharge steam from its locomotive even within the limits of a city and near traveled thoroughfares, provided in so doing it acted as a person of prudence would act under similar circumstances." In *Louisville & N. R. Co. v. Penrods*, 66 S. W. (Ky.) 1013, the court held that it was negligence to make the customary noises incident to the movement of a train, when the employees in charge had reason to fear injury therefrom to the driver of a team. *Toledo, W. & W. R. Co. v. Harmon*, 47 Ill. 298.

In the last two cases it would seem that the engineer had seen the perilous position of the occupants of the wagon, whereas in the case at bar the evidence is that he did not. We lay no stress on that distinction between the cases. The defendant's liability does not depend alone on what its employees saw, but on what, under the circumstances, they might have seen and should have seen. The fireman at least might have seen the plaintiff's peril, and, in view of all the circumstances, it was certainly the duty of some one engaged in operating the train to see. The engine was occupying a portion of a public street, where teams were passing and repassing within a few feet of the pilot. Those in charge of it knew, or ought to have known, as a matter of common experience, the effect of escaping steam on an ordinary team passing near an engine. They knew the condition of the crossing and that only a portion of it was planked. The accident is one which might have been easily foreseen by ordinary forecast as a natural and probable result of turning on the steam, and one which could have been prevented by the exercise of slight care on the part of the defendant's employees, without substantial interference with the due operation of

the road.   We are satisfied that, in view of the situation
of the parties and the attendant facts and circumstances,
the turning on of the steam, without taking any precau-
tion to guard against injury therefrom to those using the
crossing, was actionable negligence.

But the defendant contends that the evidence shows
contributory negligence on the part of the plaintiff.   We
do not think so.   The facts relied upon to show contribu-
tory negligence are that the plaintiff and his companion
might have taken a different route after they saw the
engine on the street, and that they attempted to cross the
track without taking any precaution to find out whether the
train or engine was about to move.   Their direct route
lay across these tracks.   The other route meant going out
of their way a total distance of about five blocks.   They
saw other teams passing in front of the engine.   They had
no warning that it was about to move.   Ordinary care
does not demand that one in lawful use of a highway and
driving a team should dismount and make inquiries in re-
gard to the intentions of those in charge of a locomotive
standing at a crossing, or to abandon his route in appre-
hension that those in charge of the engine will operate it
in reckless disregard of his safety.   He has a right to
assume that they will act with ordinary care and with
due regard for the safety of those using the crossing.   A
train standing at a crossing has no precedence over an
ordinary traveler, their rights being equal.   Each is
bound to act with due regard to the other.   *Allen v. Bos-
ton & M. R. Co.,* 94 Me. 402, 47 Atl. 917.   Each has a
right to assume that the other will act as a man of ordi-
nary care and prudence would act in like circumstances.
A person attempting to cross the tracks at a railroad
crossing is put upon his judgment.   The act is generally
attended with more or less risk, and he has a right to act
upon conditions as they would appear to a man of ordi-
nary intelligence and prudence, and on the assumption
that those engaged in operating the road will not need-
lessly enhance his danger,

In our opinion, the evidence is amply sufficient to sustain the verdict of the jury, and we therefore recommend that the judgment of the district court be affirmed.

DUFFIE and JACKSON, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district is

AFFIRMED.

The following opinion on motion for rehearing was filed November 9, 1907. *Rehearing denied:*

Railroads: NEGLIGENCE: QUESTION FOR JURY. When an engine is standing at a street crossing in a city, and teams are continually passing and repassing near thereto, and the engine is suddenly started without warning when a team is crossing on the public highway and is in close proximity to the engine, it is a question of fact for the determination of the jury whether the engineer is guilty of negligence in failing to ring the bell or give other warning of the starting of the engine.

SEDGWICK, C. J.

The strong and exhaustive brief which is filed in support of the motion for rehearing is devoted mainly to the application of the well-established principle, which is also recognized in the former opinion, that a railroad company is not liable to damages because horses are frightened by the prudent and necessary operations of the road. This case we think, however, is rather within the other principle suggested in the opinion, a principle declared in *Toledo, W. & W. R. Co. v. Harmon*, 47 Ill. 298, and in many other cases. The case last cited was an action for damages caused by a horse becoming frightened by the escape of steam from an engine, and Mr. Justice Walker in the opinion of the court said: "Both parties have the right to pass and repass over the roads in the modes adapted to their construction; and each is under equal and reciprocal obligations to observe the rights of the other; and neither can wilfully, wantonly or negligently, endanger, obstruct or delay the other in the enjoyment of his rights without incurring liability for the injury; and each party, in the exercise of his right, must observe the

highest degree of prudence, circumspection and skill, to avoid the infliction of injury to others." It seems to be conceded that in the case at bar the team in question was not a gentle, well-trained team, and the plaintiff might reasonably have supposed that, if the engine were started while his team was immediately in front of it, it would result in the injury complained of. But was the plaintiff bound to take notice that the engine might start without any warning being given to the public? Other teams were passing and repassing in front of this engine at the time the plaintiff arrived at the crossing. The plaintiff and his brother, who was driving the team, stopped at the crossing to consider whether it would be safe to pass. They considered that the engine might stand for some length of time. Of course, it was impossible for them to know how long the engine might remain where it then was. It might, for all they knew, remain for half an hour, or even longer. The engineer must have known that teams were passing in front of and close to his engine. He might reasonably have supposed that, if the drivers knew that the engine was about to start and would commence operations when the team was in close conjunction with the engine, they would hesitate to drive their teams into such danger. What was the reasonable course for the engineer to pursue in view of the principle of law above quoted from the Illinois court? If he had caused the engine bell to ring a short time before he started the engine, this plaintiff would have known the danger, and in all probability this accident would not have occurred. It seems very clear that under the circumstances it was a question for the jury whether it was negligence on the part of the engineer to fail to give any warning of the starting of the engine. The railroad company, then, was not entitled to a peremptory instruction taking this question away from the jury; and, as the failure to give such instruction is their only cause of complaint, we think that the opinion is right, and the motion for rehearing is

OVERRULED.