BERGERON, Respondent, v. MINNEAPOLIS & ST. LOUIS
RAILWAY COMPANY, Appellant.

(159 N. W. 51.)

. (File No. 3706.   Opinion filed August 29, 1916.)

1.   Negligence—Contributory Negligence—Engine Frightening Team
—Plaintiff's,    Defendant's    Negligence—Directing    Verdict—
Questions for Jury.

In a suit against railway company for damages for negli-
gence in so handling an engine as to frighten plaintiff's
horses, resulting in her injury, it appearing that plaintiff, who
had for many years driven the team over a crossing, and
they had never been frightened by engines or trains, it appear-
ing that after an engine passed a crossing on a sidetrack and
stopped some 200 feet away, plaintiff, who was approaching
the crossing in a triple top lumber wagon, stopped the team
while said engine was passing, and thereafter, and following
an automobile that was crossing the track, she drove upon the
main track, whereupon her horses became frightened by the
noise of the engine which had, without giving a starting sig-
nal, moved back to and beyond the crossing to a switch, and
then upon the main tract and proceeded toward the team; that
team because of fright refused to move forward across the
tracks, but began to move backward and down the inclined
road leading to the tracks, a distance of some 25 feet, while the
engine passed the crossing on the main track; and a bystander
meanwhile taking hold of the horses' heads, attempted to con-
trol them but they continued backing toward a culvert into
which one of the hind wheels sank, the horses plunging more
or less; that plaintiff asked her son, who was at the horses'
heads, whether he could hold them while she got out of the
wagon, he replying that he could; that plaintiff then stepped
over the wagon box onto the front wagon wheel and while
her foot was on its top, the horses again plunged, causing her
to fall, resulting in the injuries complained of; the evidence
disclosing that defendant's employees were guilty of negligence
in starting the engine, held, that whether plaintiff was guilty of
negligence in approaching and attempting to cross the tracks
while defendant's engine was on said side tracks more than
200 feet away, giving no starting signal, was a question for
the jury; as was also the question whether defendant's serv-
ants were guilty of negligence in proceeding in operating the
engine apparently oblivious to the close proximity of plaintiff's
team in its frightened condition, and also the question whether
plaintiff was prevented from proceeding and found it impossi-
ble because of the fright of the horses; and the trial court did
not err in refusing to direct a verdict in favor of defendant,

and in submitting to the jury defendant's negligence, plaintiff's contributory negligence, and whether the acts of defendant's employees were the proximate cause of the injury.

2. **Same—Railroad Crossing—Engine Frightening Team—Reciprocal Duties of Railroad and Wagon-driver—Presumption.**

In a suit for damages for injuries caused to plaintiff while driving a team across a railroad track, her horses becoming frightened by an engine, held, in determining the questions of negligence and contributory negligence, that the rights of the public and a railroad company at a public crossing are mutual and reciprocal; both being charged with the mutual duty of keeping careful lookout to avoid inflicting or receiving injuries; the degree of mutual diligence being such as a prudent person would exercise under the circumstances and at the particular time and crossing; that under this rule each party in regulating his conduct may presume that the other will exercise reasonable care.

3. **Same—Engine Frightening Team—Right to Make Noises, Rule.**

The right to operate railroads necessarily includes the right to make the usual noises necessary to the movement of its engines and trains. So held, in a suit for damages for injuries resulting from plaintiff's horses being frightened by an engine.

4. **Same—Engine Frightening Team—Evidence, Unnecessary Noises, Sufficiency—Presumption.**

In a suit for damages resulting from plaintiff's team being frightened by defendant's engine, held, that the evidence fails to show that defendant's employees, when starting the engine from a stock yards back toward a crossing over which plaintiff was seeking to drive her team, caused unnecessary noises, or were guilty of negligence at that particular time; that they were not bound to presume or anticipate that plaintiff's team would become frightened at the usual and ordinary noises made in operating the engine.

5. **Negligence—Engine, Reasonable Care in Operating, After Frightening Team—Question for Jury.**

The rule of law that the right to operate trains and engines carries with it the right to make the usual noises accompanying such operation, does not free a railroad company from the duty of using reasonable care to prevent injuries to plaintiff after they knew that her team had become frightened and practically unmanageable. Held, further, that whether in the instant case defendant's employees exercised reasonable care in this respect was, under the evidence, a question for the jury.

6. **Same—Engine Frightening Team—Noises in Exercise of Lawful Right—Rule—Directing Verdict.**

In a suit for damages for injuries resulting from plaintiff's

team being frightened by defendant's engine, **held,** that the
rule of law, that, where both parties are rightfully pursuing
their respective calling or business, that in operating a rail-
road engine certain noises are necessarily made, and that the
single fact that a team took fright at usual and necessary
noises does not make the railroad liable where, in the exer-
cise of such lawful right, the noises produced were made with-
out guilty or wrongful conduct, is approved; and, while not
decisive of the instant case, yet if plaintiff's cause of action
rested alone upon the allegation and proof of negligence in
starting defendant's engine, and thereby frightening plaintiff's
team, defendant would under the evidence, have been entitled
to a directed verdict.

7. **Negligence—Evidence—Engine Frightening Team—Subsequent
    Negligence by Engineer—Question for Jury.**
    In a suit for damages for injuries resulting from plaintiff's
    team being frightened by defendant's engine, involving the
    question whether the engineer, after discovering that the team
    was frightened and had become unmanageable, was guilty of
    negligence in operating his engine, **held,** that under the evi-
    dence, that question was one of fact for the jury. **Held,** fur-
    ther, that where the conditions are such that noises incident
    to the movement of the engine would endanger those near the
    track, and could be temporarily suspended without materially
    interfering with the due operation of the road, ordinary prudence
    and a due regard for the rights and safety of others demands
    that the noises be prevented or suspended until the danger is
    past. **Held,** further, that whether, in the instant case, due re-
    gard for the rights and safety of others demanded that the
    engineer should temporarily suspend the operation of the en-
    gine after seeing that the team was frightened, was a question
    for the jury.

8. **Negligence—Engine Frightening Team—Subsequent Moving of
    Engine—Judging Whether Team Under Control, Question for
    Jury.**
    In a suit for damages for injuries resulting from plaintiff's
    team being frightened by defendant's engine, the question
    whether, after plaintiff's team had become unmanageable from
    being frightened by the engine, the engineer, who saw two
    men at the heads of plaintiff's horses seeking to control them,
    was justified in believing that the team was under control
    and that he might safely proceed to drive the engine over
    the crossing, which had been approached by said team, was a
    question for the jury; especially in view of the evidence tend-
    ing to show that from the time they were first frightened until
    plaintiff's injury, the team was practically unmanageable.

**9.  Same—Engine  Frightening . Team—Proximate  Cause,  Rule—
Question for Jury—Presumption of Submission to Jury.**

In a suit for damages resulting from injuries caused by plaintiff's team being frightened by defendant's engine, held, under the evidence, that it cannot be assumed that negligence of the defendant, if it existed, was not the proximate cause of the injury; but the real question is whether plaintiff herself was negligent and careless in stepping on the wagon wheel while attempting to escape from the dangerous position in which she found herself because of the frightened. and unmanageable condition of her team; the rule of law being that one party cannot, by his want of care, put the other in danger, and then excuse himself from liability on the ground that the one injured did not use good judgment in extricating himself from a peril so induced.  Held, further, under the evidence, that the question of proximate cause must be presumed to have been submitted to the trial jury.

**10.  Negligence—Evidence—Inference  of  Negligence  from  Facts,
Rule—Question for Jury.**

In a suit for damages from negligence, held, that as negligence is usually deduced as an inference of fact from several facts and circumstances disclosed by the testimony, therefore, in such cases, if unbiased men would differ as to such inferences, then they cannot be made without the intervention of a jury, although all witnesses agree in their statements, or there is but one statement which is consistent throughout.  So held, in refusing to consider the evidence on appeal, regarding its insufficiency to support the verdict.

**11.  Same—Evidence—Inference  of  Negligence—Directing  Verdict,
Rule.**

It is only when the inference of negligence, or the absence of it, from the undisputed facts proved is inevitable, that the court will direct a verdict.

**12.  Negligence—Actionable  Negligence—"Ordinary  Care"—"Reasonable Prudence"—Question of Law, Rule.**

The absence of "ordinary care" or "reasonable prudence," under conditions which require their exercise, constitutes actionable negligence.  Held, further, that it is only where the facts are such that all reasonable men must draw the same conclusion from them, that the question of negligence is considered one of law for the Court.

Appeal from circuit court, Grant County.  HON. ALVA E. TAYLOR, Judge.

Action by Mary Bergerson, against Minneapolis & St. Louis Railway Company, to recover damages for personal injury, from

a judgment for plaintiff, and from an order denying a new trial, defendant appeals. Affirmed.

Case & Case (W. H. Bremner of counsel), for Appellant.

Robert D. Jones, and Harry C. Jones, for Respondent.

(2) To point two of the opinion, Appellant cited: Pendroy v. G. N. Ry. Co. 117 N. Y. p. 531; Hope v. G. N. Ry. Co. 122 N. W. p. 997.

Respondent cited: Vol. 33 Cyc. 922, 977; Texas & Pacific Railway Co. v. Cody, 166 U. S. at page 606, Vol. 41 Law Ed. at page 1132; Williams v. Chicago, B. & Q. R. Co., 111 N. W. 596, 14 L. R. A. (N. S.) 1224; Continental Improvement Co. v. Stead, 95 U. S. 161, 24 Law Ed. 403; Allen v. Boston & M. R. Co., 47 Atl. 917, 94 Me. 402; 2 Thomp. Com. Law Neg., Sec. 1568.

(3) To point three of the opinion, Appellant cited: Lake Shore and M. S. Ry. Co. v. Butts, 62 N. E. 647; Louisville & N. R. Co. v. Sights, (Ky.) 89 S. W. 132; Cahoon v. Chicago and Northwestern Railway Company, (Wis.) 55 N. W. 900; Lyons v. C. M. & St. P. Ry. Co. (S. D.) 132 N. W. 679.

Respondent cited: Williams v. C. B. & Q. Ry. Co. 78 Neb. 695, 111 N. W. 596; 78 Neb. 701, 113 N. W. 790, 14 L. R. A. (N. S.) 1224.

(4) To point four of the opinion, Appellant cited: West v. Northern Pacific Railway Company, (N. D.) 100 N. W. 254; Northern Pacific Railway Company v. Freeman, 174 U. S. 383. U. S. p. 383.

(5) To point five of the opinion, Respondent cited: Vol. 33 Cyc. 937; Williams v. C., B. & Q. Ry. Co., 78 Nebr. 695, 111 N. W. 596, 78 Nebr. 701, 113 N. W. 790, 14 L. R. A. (N. S.) 1224; L. & N. R. Co. v. Penrods, (Ky.) 66 S. W. 1013.

Respondent cited: 33 Cyc. 990, 1047.

(7) To point seven of the opinion, Respondent cited: John Flannelly v. Delaware & Hudson Co., 225 U. S. 601, 56 Law Ed. 1221; Rademacher v. Detroit G. H. & M. R. Co., 123 N. W. 45; Duffy v. Missouri P. R. Co., 19 Mo. App. 380.

(9) To point nine of the opinion, Respondent cited: 12 Kan. 354, 15 Am. Rep. 362; Chicago etc. R. Co. C. McBride, 54 Kan. 172, 37 Pac. 978; Vol. 33 Cyc. at page 987; Lakeshore etc. R. Co. v. Ehlert, 19 Ohio Cir. Ct. 177, 10 Ohio Cir. Ct. 443.

Kellny v. Missouri Pac. R. Co. 13 S. W. 806, 8 L. R. A. 783;
St. Louis etc. R. Co. v. Dawson, 64 Kan. 99, 67 Pac. 521; Lundien v. Fort Dodge & D. M. & S. R. Co. 147 N. W. 308; 8, Hypothetical Questions.

(10) To point ten of the opinion, Respondent cited: Valan v. Milwaukee & N. R. Co. 51 N. W.; Hill v. City of Fond du Lac 56 Wis. 242, 14 N. W. Rep. 25; Nelson v. Railway Co. 60 Wis. 323, 19 N. W. Rep. 52; 15 Am. & Eng. Ann. Cas. 734, note.

(12) To point eleven of the opinion, Respondent cited: Hill v. City of Fond du Lac 56 Wis. 242, 14 N. W. Rep. 25; Nelson v. Railway Co. 60 Wis. 323, 19 N. W. Rep. 52.

(12) To point twelve of the opinion, Respondent cited: Grand Trunk Railroad Company of Canada v. Ives, 144 U. S. 408, 36 Law Ed. 485; Amanta v. Mich. Central R. Co., 143 N. W. 76.

SMITH, J. · Action for negligence in frightening plaintiff's team, resulting in personal injuries to plaintiff. At the close of all the evidence defendant moved for a directed verdict on two grounds: First, that the evidence failed to show negligence on the part of defendant; second, that the evidence disclosed negligence on the part of plaintiff such as to preclude recovery. Briefly stated, the circumstances disclosed by the undisputed evidence are as follows:

The plaintiff, a woman 45 years of age, lived on a farm 8 miles from Revillo, where she had resided about 13 years. On the 27th of October, 1912, she drove a team of horses attached to a triple box wagon to the town of Revillo. The town is on the north side of defendant's railway tracks. Plaintiff loaded the wagon with a ton and a half of coal, groceries, eight sacks of apples, and a large grocery box. The triple wagon box was about 4 feet high. The spring seat in which plaintiff rode was on the front end of the second of the triple boxes. Plaintiff started for home about 4 o'clock in the afternoon, driving along a road or street on the north side of the railroad track about 100 feet from the track, in an easterly direction, to a point two or three wagon lengths from the place where the wagon road or street turns south across the railroad tracks. Two tracks run east and west over the crossing; the north track being the main line, and the other, about 12 feet south, being a side track run-

ning west 210 feet from the crossing to the stockyards. Upon reaching a point two or three wagon lengths west of the north and south crossing, plaintiff saw defendant's engine moving westward on the south or stockyards track, and stopped her team while the engine passed westward and stopped at the stockyards; while the engine stood still at the stockyards, parties in an automobile passed plaintiff's team, turned south, and passed over the crossing. Plaintiff followed, and reached the north track. At about that time the engine, which had been standing still at the stockyards, without giving any starting signal, began to move eastward on the south track, emitting quantities of steam and smoke. Plaintiff's team became frightened, and refused to move forward across the tracks, but began, in spite of plaintiff's efforts, to move backward down the somewhat inclined road or fill leading up to the tracks, backing down a distince of 25 or 30 feet, while the engine passed east over the south crossing to a switch 222 feet east, where it switched over on the north or main track, and again proceeded west to the crossing on the main track. During this time plaintiff's son, who was on horseback, and another man, who happened to notice the frightened team, took hold of the horses' heads and attempted to control them. The horses continued to back down the road toward the culvert or ditch, into which one of the hind wheels of the wagon sank; the front part of the wagon and the spring seat remained level; during this time defendant's engine passed west on the north track while the horses were still frightened and plunging more or less; when the hind wheel of the wagon sank into the ditch, and after the engine had passed and was about 200 feet west, plaintiff asked her son, who was at the heads of the horses, whether they could hold the team while she got out of the wagon. The son replied that he thought they could. Plaintiff then stepped over the wagon box onto the front wheel of the wagon, and while her foot was on the top of the wheel the horses again plunged, causing her to fall; the fall resulting in the injuries complained of. Plaintiff was accustomed to handling horses, had done farm work, had hauled grain and farm produce to market, had driven this team over the same crossing about once a week for 10 or 12 years, and the same day of the accident had driven them close to a freight train, and during all that time the horses

had never been frightened by engines or trains, or the noises made in operating them.

The first question presented is whether the court erred in overruling defendant's motion for a directed verdict at the close of all the evidence, and submitting to the jury the question of defendant's negligence, plaintiff's contributory negligence, and whether the acts of defendant's employees were the proximate cause of plaintiff's injuries.

[1] Whether the plaintiff was guilty of negligence in approaching and attempting to cross the tracks while defendant's engine was standing at the stockyards more than 200 feet away, giving no starting signal, we think, was a question for the jury. Whether defendant's servants were guilty of negligence in proceeding with the operation of the engine, apparently oblivious to the close proximity of plaintiff's team and its frightened condition, and the evidence would plainly warrant the jury in finding that defendant's employees must have seen the actions and frightened condition of the team, we think, was likewise a question for the jury. Appellant's suggestion that plaintiff was negligent in not proceeding across the track is not tenable. Whether she was prevented from proceeding, and found it impossible, because of the fright of the horses, was, we think, a question for the jury.

We cannot say, as a conclusion of law, that plaintiff was guilty of negligence in driving her team up to the railroad tracks while the defendant's engine was standing still at the stockyards, something over 200 feet away, and she could have crossed both tracks and reached a place of safety in passing a distance of a little more than 12 feet. She had driven the team many times near trains and engines, and they had never been frightened thereby; she had stopped the team at least 100 feet away from the track, and waited and watched several minutes, to ascertain whether the engine was about to move. Up to the moment she reached the railroad track the engine was motionless, and had given no starting signal, by ringing the bell or otherwise. Certainly the question whether she was guilty of negligence in approaching a place of danger was for the jury.

[2] The rule of law applicable in this case is very clearly and accurately stated in 33 Cyc. 922 (2):

"As a general rule the rights and duties of the public and a railroad company at a public crossing are mutual and reciprocal, and both are charged with the mutual duty of keeping a careful lookout to avoid inflicting or receiving injury, the degree of diligence to be used on each side being such as a prudent person would exercise under the circumstances at the particular time and crossing, in endeavoring to perform his duty."

[4] Under this general rule each party in regulating his conduct may presume that the other will exercise reasonable care. Loucks v. C., etc., R. Co., 31 Minn. 526, 18 N. W. 651; Williams v. C. etc., R. Co., 78 Neb. 701, 111 N. W. 596, 14 L. R. A. (N. S.) 1224; Allen v. Boston & M. R. Co., 94 Me. 402, 47 Atl. 917.

[3] The right to operate railroads necessarily includes the right to make the usual noises incident to the movement of its engines and trains. Cahoon v. C. & N. W. R. Co., 85 Wis. 570, 55 N. W. 900; Hahn v. S. P. R. R. Co., 51 Cal. 605; Louisville & N. R. Co. v. Sights, 121 Ky. 203, 89 S. W. 132.

[4-6] Appellant contends, and we think correctly under the evidence, that its employees, when starting the engine from the stockyards, caused no unnecessary noises and were guilty of no negligence at that particular time. They were not bound to presume or anticipate that plaintiff's team would become frightened at the usual and ordinary noises made in operating the engine. But they must have seen, and were bound to see when it actually occurred in plain view at the crossing, that plaintiff's team had become frightened and, to an extent. at least, unmanageable; and it was their duty thereafter to use reasonable care in the operation of the engine to prevent injury to plaintiff. The rule of law that the right to operate trains and engines carries with it the right to make the ordinary and usual noises accompanying such operation did not free them from the duty of using reasonable care to prevent injuries to plaintiff after they knew that plaintiff's team had become frightened and practically unmanageable. Whether defendant's employees exercised reasonable care in this respect was properly a question for the jury. Louisville, etc. R. Co. v. Penrod, 24 Ky. Law Rep. 50, 66 S. W. 1013, 1042.

Appellant relies largely upon the rule laid down in Lake Shore & M. S. R. Co. v. Butts, 28 Ind. App. 289, 62 N. E. 647, where the court said:

"The engine and train were rightfully upon appellant's track. Appellee was rightfully upon the highway, and in driving his team across the track was guilty of no negligence. Both parties were where they had the right to be, and each had the right to carry on the particular business engaged in at the time and place in such manner as was reasonable and necessary to the use and enjoyment of their property. Appellant had the legal right to operate its road and move its trains with engines propelled by steam. In so doing certain noises are necessarily made. The single fact that a team took fright at these usual and necessary noises cannot make the company liable. If these usual and necessary noises were produced in the exercise of a lawful right, and the employees, through whose acts the noises were produced, were not guilty of any wrongful conduct, there can be no liability."

[7] Many decisions are cited as sustaining this rule. The rule meets with our approval, but is not decisive of this case. If plaintiff's cause of action rested alone upon the allegation and proof of negligence in starting the engine at the stockyards, and thereby frightening plaintiff's team, defendant would have been entitled to a directed verdict under the authorities cited. So far as the evidence discloses, the defendant's employees were not guilty of negligence in starting the engine. But whether their subsequent acts were negligent, when they must be presumed to have seen and to know that plaintiff's team had become frightened and unmanageable, was a question of fact for the jury. We think the correct principle is laid down in the case of Williams v. Chicago, B. & Q. R. Co., 78 Neb. 695, 111 N. W. 596, 14 L. R. A. (N. S.) 1224, where the court said:

"We have not overlooked the general rule applied in Hendricks v. F., E. & M. V. R. Co., 67 Neb. 120, 93 N. W. 141, to the effect that a railroad company is not liable for injuries caused by a team taking fright at the ordinary operation of a train on its road. While that rule is generally recognized by the courts, we know of no case where any court has shown a disposition to depart from the humane doctrine that a person must conduct his business with due regard for the safety of others. Noise is an unavoidable incident to the operation of railroad trains. But, where the conditions are such that the noise incident to the movement of a train or engine would endanger those lawfully

near the track, and could be temporarily stayed or suspended without materially interfering with the due operation of the road, ordinary prudence and a due repard for the rights and safety of other people demand that the noise be prevented or suspended until the danger is past."

Whether in this case a due regard for the rights and safety of other people demanded that defendant's employees should temporarily suspend or stay the operation of the engine after plaintiff's team was seen to have been frightened, was properly a question for the jury.

[8] Appellant further contends that when the engine moved from the switch toward the crossing on the main track, ringing the bell, and defendant's employees saw two men at the heads of plaintiff's horses, they were justified in believing that the team was under control and they might safely proceed westward. But the team was at all times in plain view of defendant's employees, and the question whether it was under such control as to justify them in omitting such precaution as might have prevented further frightening of the team was a question for the jury, especially in view of the evidence which tends to show that from the time they were first frightened up to the time of plaintiff's injury, the team was practically unmanageable.

[9] Appellant further contends that negligence of the defendant, if it existed, was not the proximate cause of plaintiff's injuries. We cannot agree with this contention. It might be sufficient to observe, assuming negligence, that plaintiff's injuries would not have occurred, except for that negligence. But the real question, however, is whether the plaintiff herself was negligent and careless in stepping on the wagon wheel when attempting to escape from a dangerous position, in which she found herself because of the frightened and unmanageable condition of her team. We think the principle announced in Lundien v. Fort Dodge, D. M. & S. R. Co., 166 Iowa, 85, 147 N. W. 308, is applicable here. The court said:

"It is also a well-settled principle, in all cases where the question of negligence is involved, that one party cannot, by his want of care, put the other in danger, and then excuse himself from liability on the ground that the one so injured did not use good judgment in extricating himself from a peril so induced."

In any event the question might properly be submitted to the jury, as it must be presumed it was in this case.

[10, 11] In view of the foregoing conclusions and statement of the facts disclosed by the record, we deem it unnecessary to consider appellant's assignment and contention that the evidence is insufficient to support the verdict. In Hill v. City of Fond du Lac, 56 Wis. 242, 14 N. W. 25, it is said:

"Negligence is almost always to be deduced as an inference of fact from several facts and circumstances disclosed by the testimony, after their connection and relation to the matter in issue have been traced, and their weight and force considered. In such cases, if unbiased men would differ as to such inferences, then they cannot be made without the intervention of a jury, although all the witnesses agree in their statements, or there be but one statement which is consistent throughout."

"It is only when the inference of negligence, or the absence of it, from the undisputed facts proved, is inevitable, that the court will direct a verdict." Nelson v. Railway Co., 60 Wis. 323, 19 N. W. 53.

[12] The absence of "ordinary care" or "reasonable prudence," under conditions which require their exercise, constitutes actionable negligence, and we think the language of Justice Lamar in G. T. R. Co. v. Ives, 144 U. S. 408, 12 Sup. Ct. 679, 36 L. Ed. 485, is pertinent here.

"There is no fixed standard in the law by which a court is enabled to arbitrarily say in every case what conduct shall be considered reasonable and prudent, and what shall constitute ordinary care, under any and all circumstances. The terms 'ordinary care,' 'reasonable prudence,' and such like terms, as applied to the conduct and affairs of men, have a relative significance, and cannot be arbitrarily defined. What may be deemed ordinary care in one case may, under different surroundings and circumstances, be gross negligence. The policy of the law has relegated the determination of such questions to the jury, under proper instructions from the court. It is their province to note the special circumstances and surroundings of each particular case, and then say whether the conduct of the parties in that case was such as would be expected of reasonable, prudent men, under a similar state of affairs. When a given state of facts is

such that reasonable men may fairly differ upon the question as to whether there was negligence or not, the determination of the matter is for the jury. It is only where the facts are such that all reasonable men must draw the same conclusion from them, that the question of negligence is ever considered as one of law for the court."

Assignments 6 to 53, inclusive, cover various ruling of the trial court in receiving or excluding evidence. These assignments are so numerous that a discussion of them in groups is impracticable. We have carefully considered them all, and are not convinced that any of them were or could have been prejudicial to appellant's rights. The rules of law involved in counsel's discussion of these assignments are largely elementary, and the case presents no new application of such rules to any unusual state of facts.

Upon a careful consideration of the entire record, we are convinced that the judgment and order of the trial court must be affirmed.