Lawson v. Union P. R. Co.

James D. Lawson, appellee, v. Union Pacific Railroad Company, appellant.

Filed February 27, 1923.     No. 22235.

1. **Railroads:** Negligence. Where it appears that after dark the servants in charge of one of defendant's engines, with powerful electric headlight attached, leave the same in such a position that the full glare of said light is cast upon a nearby crossing over which the public pass and animals are liable to be driven, the effect of which light is to cast dark shadows upon the lower ground in the immediate proximity to defendant's track, calculated to frighten cattle being driven over said crossing, and said cattle, becoming frightened, refuse to move forward, but, getting beyond the control of their drivers, crowd westward along defendant's track, where within a few minutes thereafter, a belated fast-moving passenger train of defendant strikes and kills many of the herd, and where it further appears that, after placing the engine and headlight in the position stated, those in charge thereof absented themselves and remained absent therefrom until after the happening of the accident, leaving no one present to remove the cause of the danger by dimming or extinguishing the light, such facts constitute negligence on the part of defendant for the injurious consequences of which it may be held liable.

2. ———: ———. The fact that defendant may have had no actual knowledge of the alleged effect of its light upon the crossing, nor of the propensity of animals to frighten thereat, will not necessarily excuse it from the charge of negligence, where it further appears that, had defendant's servants been at their post of duty, they could, in the exercise of ordinary diligence, have discovered the dangerous effect the headlight was having upon plaintiff's cattle and promptly removed the source of danger by dimming or extinguishing the light.

3. **Negligence:** Question for Jury. Even though plaintiff, in doing what he did, with knowledge of certain facts ascribed to him, was guilty of negligence, his negligence cannot be said to be of such a degree as that the court was required, as a matter of law, to direct a verdict for defendant. At most, it produced a case of comparative negligence for the jury.

4. **Instructions** upon the subject of comparative negligence examined and approved.

Appeal from the district court for Buffalo county: Bruno O. Hostetler, Judge. *Affirmed.*

Lawson v. Union P. R. Co.

*C. A. Magaw, Thomas F. Hamer* and *Thomas W. Bockes,* for appellant.

*Prince & Prince, Fred A. Nye* and *M. H. Worlock,* contra.

Heard before Morrissey, C. J., Rose, Aldrich and Day, JJ., Troup, District Judge.

Troup, District Judge.

Plaintiff brings his action against the defendant, Union Pacific Railroad Company, to recover for the loss of 45 head of cattle killed by one of defendant's fast-moving passenger trains at or near a certain public highway crossing over defendant's tracks in or near the village of Buda, Buffalo county, Nebraska. The undisputed evidence shows the value of the cattle destroyed to be $4,757; but, presumably to avoid federal jurisdiction and maintain his action in the state courts, the plaintiff reduced the amount of recovery asked to $3,000. The jury returned a verdict for plaintiff for $2,000 and interest, a total of $2,472,13. Defendant appeals.

From the petition it appears that at or about 6 o'clock on the evening of December 11, 1917, plaintiff received a shipment of cattle over defendant's road at Buda, Nebraska, and, deciding to drive the cattle to his feed yards located about six miles northwest of Buda that night, plaintiff afoot and three men on horseback assisting him drove the herd from the stock pens along the highway immediately south of and parallel to defendant's tracks, a distance of about 2,000 feet, then north onto the crossing of defendant's mainline tracks, the route taken being the natural and most practical one to point of destination, arriving at the crossing a few minutes before 7 o'clock; that defendant had negligently failed to maintain cattle-guards on either side of said crossing; that defendant's freight train which had brought plaintiff's cattle to Buda was left standing on the south switch track with the engine attached headed west,

equipped with a powerful electric headlight, within a few feet (from 300 to 500) of said highway crossing, which defendant's servants negligently left lighted in full glare casting intense rays of light over and upon said crossing; that defendant's north track at such crossing is about 18 inches higher than the ground in the immediate proximity of said north track, causing the rays from the headlight to cast shadows over the lower ground making it look black; that said cattle, after going upon said crossing, became greatly frightened at said light and the shadows cast beyond its rays, so that they refused to move farther north and cross said mainline track, but "milling" about became unmanageable and crowded off said crossing onto the defendant's tracks west thereof; that at said time a passenger train of defendant company, known as No. 7, and running several hours late, approached from the east at a very high rate of speed, and passing through said town of Buda without lessening its speed negligently ran into said cattle then on defendant's track, killing 45 head thereof; that said cattle were killed wholly through the negligence of defendant in maintaining the powerful and undimmed headlight on the freight engine, the failure to maintain cattle-guards at the crossing in question, and the negligence of its servants in charge of its passenger train in the failure to exercise ordinary care to stop said train before coming into collision with said cattle.

Defendant's answer admits that at the time stated in plaintiff's petition plaintiff and his employees drove a herd of cattle belonging to plaintiff along the public highway south and parallel to defendant's track from the stock pens in Buda to the public highway crossing on defendant's track, referred to in plaintiff's petition, and that said cattle were being driven by plaintiff and his employees upon said public crossing at a time when defendant's westbound passenger train No. 7 was approaching from the east; it admits that no cattle-guards had been constructed on either side of said cross-way, but

alleges that the law did not require the same; it admits that certain of plaintiff's cattle were killed by defendant's train No. 7, but denies each and every other allegation in plaintiff's petition contained. Further answering, defendant alleges that whatever loss or injury plaintiff may have sustained by reason of the killing of said cattle was caused wholly by the negligence of plaintiff and his servants, and without fault or negligence on the part of defendant or its employees. The reply of plaintiff denies all new matter in defendant's answer.

It will be observed that three grounds of negligence against defendant are presented by plaintiff's petition: (1) Negligence in maintaining the headlight on the freight engine standing on the side-track; (2) negligence in failing to maintain cattle-guards at the crossing; and (3) negligence in the operation of the passenger train No. 7 which killed the cattle.

Ground No. 2 was stipulated and instructed out of the case, and ground No. 3 was withdrawn from the jury by one of the court's instructions, so that ground No. 1 was the only one submitted to the jury, and agreed by both parties to be the only one for consideration here.

At the close of the entire evidence in the case the defendant requested a directed verdict in its favor. The same being refused, the case was submitted to the jury, the jury returning a verdict for plaintiff in the sum above stated. The refusal to direct a verdict and the claim that any verdict for plaintiff cannot be upheld, under the evidence, form the principal grounds of error.

An examination of the evidence shows that it sub-stantially supports the allegations of the petition in respect to the ground of negligence to be considered, and further shows that, after placing said engine, with its headlight, in the position stated, the defendant's servants in charge thereof abandoned the same for an indefinite time, with no one in attendance thereat until after the accident to the cattle had happened. Under

the evidence adduced there can be no doubt but the glaring headlight from defendant's freight engine and the effect it had upon the uneven surface at the crossing was the proximate cause of the cattle stampeding which led to their destruction. The blinding light continuing to shine, with neither the engineer nor fireman at his post to remove the cause by dimming the light while the cattle were still upon the crossing, created a negligent condition, for the injurious consequences of which we think the· defendant may be held responsible. It was not necessary that this headlight, casting its intense rays over and upon a public crossing, should have been kept burning as it was. The train and engine to which said headlight was attached was at rest and was to be at rest until it received orders to go forward. Allowing the full light to shine, as it did, was not so culpable, in our opinion, as the act of those in charge deserting their post leaving no one to remove the negligent condition by dimming or extinguishing the headlight in case an emergency arose, as one did arise in this instance. If defendant's servants had been at their place of duty and exercised ordinary care to observe what effect the light of their engine was having upon the actions of plaintiff's cattle, in all probability the mischief could have been averted by dimming· the headlight while the cattle were still upon the crossing and within the control of the drivers. It was the continuation of the negligent condition after it could and should have been removed that worked havoc among the animals, causing them to break away from the crossing and into a place where they were destroyed.

The case is not unlike one in which unusual noises occur in or about the operation of trains in the vicinity of public crossings calculated to frighten animals. The case of *Williams v. Chicago, B. & Q. R. Co.*, 78 Neb. 695, is of that character, and in which it is said: "Where the conditions are such that noises thus made would endanger a person (plaintiff's team taking fright) at a public

crossing, which result could be avoided by temporarily staying or suspending the noise without materially interfering with the due operation of the train, ordinary care and prudence require that it be thus stayed or suspended until the danger is past." In the course of the opinion the court further observes: "The defendant's liability does not depend alone on what its employees saw, but on what, under the circumstances, they might have seen and should have seen. The fireman at least might have seen the plaintiff's peril, and, in view of all the circumstances, it was certainly the duty of someone engaged in operating the train to see."

So we say, under the circumstances of the instant case, it was the duty of either the engineer or fireman, or both, to have been at his post of duty, and, had either one been there, he would or should have seen the predicament plaintiff's cattle were in, caused by the light from the engine, and that by dimming or even extinguishing same, if necessary, could have averted the accident. Why both of these employees absented themselves from their post of duty under the circumstances does not appear. Neither one was put upon the stand to explain his absence, and from this it is probably fair to infer that neither one had a justifiable excuse for doing so.

The case of *Missouri, K. & T. R. Co. v. Weatherford*, 26 Tex. Civ. App. 20, is one in which the railroad company was held liable for the negligence of its engineer for the unnecessary blowing of the whistle near a crossing resulting in plaintiff's injury, and the court said: "As the jury were authorized to find from the evidence, the employees of the appellant in charge of the engine were negligent in sounding the whistle and keeping it sounding, so that the appellee's team became frightened and ran upon the track. They were required to keep a lookout for the crossing, and if they discovered that appellee's team had taken fright, or by the exercise of ordinary care could have discovered it, or knew that

the noise being made would likely frighten a team of ordinary gentleness, and frightened the team with the unnecesary blowing of the whistle, the appellant would be liable for negligence." Substituting the "headlight" in the case at bar for the "whistle" in the case cited, we have a perfect application. See instruction to same effect, approved in *Missouri, K. & T. R. Co., v. Belew,* 22 Tex. Civ. App. 264; *Gulf, C. & S. F. R. Co. v. Box,* 81 Tex. 670; *Philadelphia, W. & B. R. Co. v. Stinger,* 78 Pa. St. 219.

Who can say that under the circumstances in the present case the defendant was not negligent in any degree? Even if the plaintiff was also negligent, it became a question of comparative negligence between the two, and that was a question for the jury to decide.

It is true that while the cattle were about to go upon the crossing the driver in the lead espied what he thought might be a train approaching from the east just appearing around a curve in the road about six miles distant, and called out to his fellow drivers, including the plaintiff, who said, "Go ahead." But the cattle were then upon the crossing, and any attempt to have turned them back at that time in the face of defendant's blinding light would have been a futile thing, as subsequent events proved, and had the condition at the crossing caused by the light and shadow which frightened the cattle not existed, or, existing, had been removed by dimming the light, the plaintiff would have had ample time to have driven his cattle across before the arrival of the train which killed them. It is said by defendant that the plaintiff knew of the existence of the light upon the crossing, and also that no one was on the engine, so far as he discovered, at the time of passing the same on his way to the crossing; that he was also familiar with the construction of the crossing, and with the habits and propensities of cattle to shy or become frightened by a sudden change from light to darkness on the surface of the ground, and that a fair inference

from the evidence is that defendant's servants had no actual knowledge of the effect of the light upon the crossing and no knowledge of the effect the condition created would have upon animals. This much we think is fairly shown or inferred from the evidence. We think, however, there is no evidence showing that plaintiff knew, or had reason to know, that the rays of defendant's headlight cast dark shadows upon the crossing or in immediate proximity thereto, or that plaintiff knew, or had reason to know, that defendant's servants had left the vicinity of their engine so as not to be able, in the exercise of ordinary care, with reasonable promptness, to protect travelers and their property on a public crossing against dangerous emergencies liable to arise on account of the headlight.

But, from what is shown and inferred from the evidence, defendant argues that plaintiff was negligent, and that, if both plaintiff and defendant were negligent, then the negligence of each is to be measured by their comparative knowledge of existing conditions, and that, if plaintiff's knowledge of the danger to be encountered equals or exceeds that of defendant, then defendant is not liable, if plaintiff embraces the danger. We think this may be conceded to the extent, if at all, plaintiff was, in fact or in law, negligent. But we are of the opinion that defendant is presuming too much on plaintiff's supposed negligence. Conceding that plaintiff knew, as he did, of the existence of the light upon the crossing before he drove his cattle there, he did not know, in advance, that it created a dangerous condition, and he had a right to assume that, if a dangerous condition created by said light was suddenly disclosed which was endangering plaintiff's cattle, defendant's servants would be on hand with reasonable promptness to abate the same. *Williams v. Chicago, B. & Q. R. Co., supra.* Under these conditions defendant's proposition itself becomes one of comparative negligence—a matter for the jury to determine under proper instructions.

Lawson v. Union P. R. Co.

We think the trial court instructed the jury properly on this question, and that defendant's objections thereto are not well taken, nor is the claim that, because the verdict rendered is less than half of plaintiff's total loss, evidence that the jury found that the defendant's negligence was less than gross and plaintiff's negligence was more than slight as compared with each other. The plaintiff limited his recovery to $3,000 and the jury were so instructed. We are of the opinion that the judgment of the lower court is warranted under the law and the evidence, and that the same should be.

AFFIRMED.

ROSE, J., dissenting.

In my opinion there is no evidence of actionable negligence on the part of defendant.

The following opinion on motion for rehearing was filed July 9, 1923. *Former opinion vacated, and judgment of district court reversed.*

Railroads: NEGLIGENCE. In an action to recover from a railroad company damages for the loss of cattle killed by a passenger train at a highway crossing, while plaintiff was attempting to drive them across the railroad tracks, proof that defendant at the time permitted the headlight of a freight train standing on a side-track 300 feet away to shine on the crossing, and that, in consequence of the light and the shadows cast by it, the cattle took fright and became unmanageable, is not evidence of actionable negligence, where there is nothing to indicate that the engineer and the fireman in charge of the freight train could reasonably or probably have anticipated what happened. *Lawson v. Union P. R. Co., ante.* p. 785, vacated.

Heard before LETTON, ROSE, ALDRICH, DAY and GOOD, JJ., BLACKLEDGE, District Judge.

ROSE, J.

This is an action to recover damages for negligence. After dark, December 11, 1917, a passenger train going west on defendant's railroad ran into a herd of plaintiff's cattle at a highway crossing west of the station at Buda and killed 45 head, worth $4,757. At that place the railroad extends east and west and crosses the

highway at right angles. From the station at Buda the highway runs west about 2,000 feet along the south side of the railroad, turns north and crosses defendant's tracks. Plaintiff drove his cattle west along the highway from the station, turned north and was attempting to cross the railroad tracks when the collision occurred. The railroad grade at the crossing is about 18 inches above the natural level of the ground. A freight train, headed west, from which the cattle had been unloaded, stood on a switch south of the main lines. Plaintiff pleaded that defendant negligently left a glaring headlight on the freight engine, permitted it to shine on the crossing, to cast shadows north of the railroad tracks, to frighten the cattle, and to make them unmanageable. As a resulting loss plaintiff demanded judgment for $3,000. Defendant denied negligence and liability for damages. The jury rendered a verdict in favor of plaintiff for $2,000 and interest computed at $472.13, or a total of $2,472.13. From a judgment thereon defendant appealed. Upon a former hearing the judgment was affirmed. *Lawson v. Union P. R. Co., ante,* p. 785. The sufficiency of the evidence to sustain the judgment being in doubt, a reargument was granted. The case has been re-examined in the light of new briefs and able arguments at the bar.

The only issue of negligence submitted to the jury was the act of defendant in permitting the headlight of the freight engine to shine undimmed while the cattle were on the crossing. If proof of that fact was not evidence of actionable negligence, there was nothing to submit to the jury and their verdict cannot stand.

It is only where different minds may draw different conclusions from evidence of a fact in issue that a question for the jury is presented. If there is no evidence of the fact the jury should not be permitted to make a finding. Was proof that the engineer and fireman left the headlight shining on the crossing evidence of actionable negligence? The answer depends

on whether they could reasonably and probably have anticipated the consequent frightening of the cattle. Plaintiff seems to recognize this principle of the law of negligence and argues that any person with common experience and knowledge knows that a glaring light thrown into the face of animals only a short distance away will frighten them. The light was not thrown in the face of the animals. It was shining on the crossing from the east at a point 300 feet away when the cattle approached from the south. There is no evidence that the engineer or the fireman knew that cattle had a propensity to scare at lights and shadows. Plaintiff was an experienced cattleman and was familiar with the highway at the railroad tracks. While the headlight was shining, assisted by three mounted men, he attempted to cross with the animals in the face of a warning by one of his own employees that a train was approaching. If, as an experienced cattleman, knowing, as he did, that the light from defendant's engine was shining on the crossing, he did not anticipate what happened, is it fair to assume without proof that the engineer and fireman, in reason and probability, knew the propensities of the animals and that the light and shadows would frighten them and make them unmanageable? It seems more reasonable to assume the contrary in the absence of proof, since engineers and firemen in the performance of their duties at night necessarily cross highways at different elevations above the natural surface of the ground, throw light on public crossings at varying angles, cast shadows along railroad tracks, observe the custom to light highway crossings in cities, villages, and country places and witness the endless caravan of moving automobiles as they throw light and cast shadows at highway crossings everywhere. The headlight was one in ordinary use and was part of the necessary equipment. The freight train was standing on a side-track near a station where the engineer was awaiting orders to proceed. He had a right to have his train

ready. If he and the fireman could not have reasonably and probably anticipated the consequence of permitting the light to shine undimmed, they did not owe plaintiff the duty to stay on the motionless engine, watch the crossing and dim the light when the cattle were driven upon the railroad tracks. The better view of the record is that the verdict is without support in the evidence. It follows that the former opinion is withdrawn, the judgment of the district court reversed and the cause remanded for further proceedings.

REVERSED.