ST. LOUIS SOUTHWESTERN RY. CO. OF TEXAS v. REYNOLDS. (No. 2071.)

(Court of Civil Appeals of Texas. Texarkana. Feb. 7, 1919. Rehearing Denied Feb. 13, 1919.)

RAILROADS ⬤⟶275(3) — OPERATION — DUTY — LOOKOUT.

Trainmen are not bound to maintain a lookout to discover whether the train's approach frightened a team standing at the side of a box car on a switch track, and so negligence cannot be predicated on their failure to keep a lookout to discover whether teams near the track were frightened.

Appeal from Franklin County Court; O. L. Reaves, Judge.

Action by M. D. Reynolds against the St. Louis Southwestern Railway Company of Texas. From a judgment for plaintiff, defendant appeals. Reversed and remanded for new trial.

J. M. Burford, of Mt. Pleasant, King & Estes, of Texarkana, and E. B. Perkins, of Dallas, for appellant.

Wilkinson & Davidson, of Mt. Vernon, for appellee.

HODGES, J. This appeal is from a judgment in favor of the appellee for $200 awarded as the value of a mule killed by the appellant's train. The killing occurred at the depot in Mt. Pleasant. The appellee had gone there to get a load of shingles from a box car standing on a switch track about 45 feet north of the main line of appellant's railroad. After stopping his team at the side of the car, he went on the inside, and while there was told that a train was approaching. Fearing that his mules would become frightened, appellee immediately came out of the car, unhitched his team from the wagon, and undertook to drive them away. In doing this he went in the direction from which the train was approaching. The mules became frightened, whirled, and ran over the appellee. One of them ran in after the train, came in contact with the cars, and sustained the injuries which later resulted in its death. The appellee testified as follows concerning the conditions under which the accident occurred:

"The train was right at me when my team began to get scared. I had gotten them loose from the wagon and as far as the back of this courtroom before the engine passed me. They commenced getting scared after the engine had passed the west end of the depot. They were rearing and pitching before the engine passed me. They first began to scare about the time the engine cleared the southwest corner of the depot —by the time the engine got in 80 steps of them. The engine was within about 25 or 30 steps of the team when they commenced to rear and

pitch. No, that wasn't the first sign they showed of being scared, but that was when they first began to rearing and pitching. Yes, I was driving the team in the direction of the engine, but the engine had passed before they jerked loose from me and whirled around and went back in the direction the train was going. The engine and maybe two cars had passed me before they jerked loose and ran back where the box car struck the mule. Yes, they got so close to the track that the corner of one of the box cars struck the mule; that is how it was injured."

No complaint is made that the train was being operated in an unusual or negligent manner, or that it was making more than the usual noise. The evidence tended to show that the appellant's agents in charge of the train did not see the team till it was too late to take any precaution. There was other evidence sufficient to support a finding that those agents could have discovered the appellee and his team in time to have stopped the train before the injury occurred. The court gave the following as a part of his main charge:

"In this case you are instructed that if you find from a preponderance of the testimony that the agents and employés of the defendant operating the locomotive saw or by the use of ordinary care could have seen the plaintiff's team, and you further find from a preponderance of the testimony that said team became unmanageable and became frightened at the approach of the train, and that said operatives on the locomotive saw or by the exercise of ordinary care could have seen that said team was becoming unmanageable and would likely be injured by the train if it continued to approach, and if you further find from a preponderance of the evidence that by the exercise of ordinary care the said operatives could have stopped the train in time to have prevented the injury, and failed to do so," etc.

Under the facts of this case, that portion of the charge which permitted a recovery if the operatives in charge of the train could by the exercise of ordinary care have discovered that the mules were frightened, in time to have prevented the injury, should not have been given. It is always the duty of those operating trains, when they discover the existence of a situation made dangerous by the approach of a train, to do what they can to prevent an injury. It is also the duty of such parties to look out for persons on or near the track at public places and other points where people may be expected, in order to prevent collisions with their train; but it is not their duty to keep a lookout for teams near the track, to discover perilous situations caused by fright alone. Hargis v. Ry. Co., 75 Tex. 19, 12 S. W. 953; Texas Central Ry. Co. v. Boesch, 103 Tex. 256, 126 S. W. 8; G., H. & S. A. Ry. Co. v. Graham, 46 Tex. Civ. App. 98, 101 S. W. 846; McMillan v. Freeman, 138 S. W. 626. The above

⬤⟶For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

authorities state the law so clearly that it is unnecessary to add more.

We are further of the opinion that, unless the testimony in this case is strengthened upon another trial, the court should direct a verdict for the appellant. The judgment, however, will be reversed, and the cause remanded for another trial.

