### TEXAS & N. O. R. CO. v. SHAW.
(No. 1327.)

(Court of Civil Appeals of Texas. Beaumont. May 4, 1926. Rehearing Denied May 19, 1926.)

1. **Judgment** ☞198.

Immaterial fact findings by jury have no effect as verdict, and cannot be considered as basis for judgment.

2. **Railroads** ☞360(1) — **Railroad, operating train without unusual or unnecessary noises, is not liable for injury from frightening team.**

Generally operators of railroad train in usual proper manner, without unusual or unnecessary noises, need not keep lookout for or warn persons at or about stations, and railroad, under such circumstances, is not liable for injuries resulting from frightening team thereat by approaching train, except under rule of discovered peril.

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

3. **Railroads** ⊜⟹360(1) — **One loading freight car held invitee, to whom railroad owed ordinary care to avoid frightening team by train, though under no duty to warn him.**

One loading freight into railroad car for shipper on railroad's premises *held* at least impliedly an invitee, to whom railroad owed ordinary care to avoid frightening his team by approach of train being backed onto track with knowledge of his presence, though there was no duty to warn him of intent to switch onto track nor to have any one on end of train to notify him of its approach.

4. **Railroads** ⊜⟹400(3) — **Negligence of operatives of engine frightening team held for jury.**

Whether operatives of engine backing onto track, near which team was standing, failed to use ordinary care in continuing to approach without slackening speed, after discovering that team had become frightened and unmanageable, so as to render railroad liable for injuries to driver thrown to ground and run over by team, *held* for jury, whose affirmative answer and determination that such negligence was proximate cause of injuries required judgment for driver, though there was no duty to warn him of intent to back in on track or have some one on end of train to notify him of its approach.

5. **Appeal and error** ⊜⟹1001(1) — **Verdict on sufficient evidence that operatives of train backing onto track failed to use ordinary care for safety of one whose team became frightened while he was loading car on such track held conclusive.**

Jury having found on sufficient evidence that operatives of engine backing onto track, on which was car being loaded, knew of loader's presence thereat, and saw that his team was becoming frightened, but continued to approach it without trying to stop or slacken speed, and thereby failed to use ordinary care, it is not appellate court's province to find to contrary.

Appeal from District Court, Tyler County; J. M. Combs, Judge.

Action by C. F. Shaw against the Texas & New Orleans Railroad Company. From a judgment granting plaintiff's motion for judgment on the verdict and refusing that of defendant, defendant appeals. Affirmed.

Baker, Botts, Parker & Garwood, of Houston, and F. J. & C. T. Duff, of Beaumont, for appellant.

C. F. Shaw, of Woodville, Collins & Collins, of Lufkin, and Coleman & Lowe, of Woodville, for appellee.

HIGHTOWER, C. J. This suit was filed by the appellee, C. F. Shaw, in the district court of Tyler county, to recover damages for personal injuries received by him on or about March 4, 1924, while upon the railroad premises of appellant, Texas & New Orleans Railroad Company, at or near its depot, while he was engaged in loading certain household furniture from a wagon into one of the freight cars of appellant that had been placed upon one of its side tracks at that point for the purpose of having the freight loaded into it.

In view of the nature of the case and the questions that we are called upon to determine, we shall make a statement more at length of the pleadings and contentions of the parties than would ordinarily be required. The appellee alleged, substantially:

That at the time of the injuries in question he was engaged in operating a public dray in the small town of Woodville, and that he was employed by a Mrs. Conner to haul certain household furniture from her home in the town of Woodville to be placed in the freight car of appellant, which had been placed on the side track in close proximity to its depot, the side track being called by the witnesses in this case the "unloading track," in accordance with a previous understanding between the shipper of the freight and appellee, with the view that the freight was to be transported to the town of Nacogdoches, in Nacogdoches county, by appellant.

That, while appellee was stationed at the car and on the west side thereof, with his team and wagon standing along parallel with said car and up against the same, and while he was busily engaged in unloading the freight from the wagon into the car, and while he was absorbed in his work, one of appellant's freight trains came into the town of Woodville, on appellant's main line track just east of its depot, and a few yards to the east of the car which appellee was loading.

That it was the custom and practice, long continued by appellant, to, at all times before switching cars onto the unloading track, when it was known that persons were engaged in loading freight on cars situated on the unloading track, warn the persons so engaged of the intention of the operatives of the train to switch cars onto the unloading track, and that appellee was relying upon the operatives of said train to do so upon this occasion, should they determine to switch cars onto the side or unloading track where he was situated with his team.

That the agents, servants, and employees of appellant, with knowledge of the presence of appellee and his team at the car on the unloading track, switched one or more cars onto the unloading track, and propelled said train of cars in the direction of appellee and his team, and that, as the same approached appellee and his team, the team became frightened, and the operatives of the locomotive and train, after discovering that the team had become frightened and unmanageable, continued to propel the train in the direction of appellee and his team until the team broke away from him and ran, throwing appellee to the ground and running over him, thereby in-

flicting the personal injuries for which he sued.

Appellee alleged, in substance, that the operatives of appellant's train knew of his presence and that of his team at the freight car where he was loading the freight, and that they owed·him the duty to warn him or in some manner apprise him of their intention to switch cars on the unloading track where he was at work and with his team, before proceeding to switch such cars, since it was the custom, habit, and practice of appellant, and which had been long continued, to always warn any persons who might be at freight cars on the unloading track with their teams of the intention of the train operatives to switch other cars thereon before so doing, and that the operatives on this occasion breached this duty to appellee.

Appellee further alleged, in substance, that the operatives of the locomotive and train, as it was being propelled backward over the unloading track in the direction of appellee and his team, saw appellee and his team, and discovered and knew that the team had become frightened at the approaching train, and were becoming unmanageable, and that, if they had exercised ordinary care to have stopped the train at the time they discovered such situation, they could have avoided the injury to appellee, but that the operatives failed to act with ordinary care and prudence after realizing and being aware that appellee's team was being frightened at the approach of the backing train.

The specific acts of negligence charged were as follows:

"(a) The defendant, its agents, servants, and employees, were negligent in propelling said locomotive and string of cars backward over said 'unloading track' towards plaintiff and his team at the time and in the manner hereinabove. set forth and pleaded, under the circumstances hereinabove shown.

"(b) The defendant, its agents, servants, and employees in charge of the operation of said train, were guilty of negligence in propelling and driving said locomotive and cars backward over the 'unloading track,' and in the direction of plaintiff and his team, as hereinabove pleaded and shown, without first causing a switchman, flagman, signalman, or some member of the train crew to be placed and stationed on the rear of the train; that is, on the south end of the train as it moved in a southerly direction over the 'unloading track' in the direction of plaintiff and his team, as pleaded and shown hereinabove.

"(c) Defendant, its agents, servants, and employees, in charge of the operation of said train on the occasion in question, were guilty of negligence in propelling and driving said locomotive and train over the 'unloading track' and backward towards plaintiff and his team, in so doing caused said locomotive to. unnecessarily and unusually emit and discharge a great quantity of steam, thereby creating great noises, fogs, and smoke, and as a result of which said team became frightened, and, after discovery upon the part of said operatives of said locomotive that said team had so become frightened and unmanageable, they continued to so propel said train backward with the accompanying noises without regard to plaintiff's safety, though they realized, or could have, with the exercise of ordinary care, realized, that plaintiff might become injured thereby, as fully shown hereinabove.

"(d) Defendant, its agents, servants, and employees, were guilty of negligence in not keeping a constant lookout in the direction of plaintiff and his team towards which they were moving at the time and under the circumstances pleaded and set forth in the foregoing paragraphs of this petition.

"(e) Defendant, its agents, servants, and employees, were guilty of negligence in failing to give any warning or signal to plaintiff of the approach of the train as they proceeded backward over the 'unloading track' at the time and in the manner pleaded in this petition, which facts are fully set forth in the preceding paragraphs hereof.

"(f) Defendant, its agents, servants, and employees, were negligent in that they failed to exercise ordinary care and prudence, after discovering the perilous position of the plaintiff and after realizing that he would in all probability be injured, to save plaintiff from injury, though they could have reasonably done so by the use of the means at hand and by stopping said train, there having been ample time to do so after they discovered that plaintiff would probably be injured, it being the duty of defendant, under the circumstances, to exercise ordinary care, by the use of all the means at hand, consistent with the safety of said locomotive and the operatives thereof, to avoid injuring.plaintiff, and in failing to do so they were negligent as aforesaid."

Appellee then alleged the extent of his injuries and claimed damages in the sum of $30,000.

Appellant answered by general demurrer and general denial.

The case was tried with a jury, and was submitted upon the following special issues:

"Special issue No. 1: Did the plaintiff,' C. F. Shaw, sustain an injury on the occasion in question? You will answer 'Yes' or 'No' as you may find the fact to be.

"Special issue A: Did the defendant fail to have a switchman, flagman, signalman, or some member of the train crew stationed at the south end of said car during the time that they were backing said train over the 'unloading track' and towards plaintiff? Answer 'Yes' or 'No' as you find the facts to be.

"Special issue B: Was such failure, if any, negligence upon the part of defendant as that term has been defined to you herein? Answer 'Yes' or 'No.'

"Special issue C: If you answered special issue B 'Yes,' and only in that event, then was such negligence, if any, the proximate cause of plaintiff's injury, if any he sustained? Answer 'Yes' or 'No' as you find the facts to be.

"Special issue D: Did the operatives of said locomotive and train fail to give the plaintiff the customary warning of the approach of the train before or while they were propelling said locomotive and cars backward over the 'unloading track' and in the direction of plaintiff?

Answer 'Yes' or 'No' as you find the facts to be.

"Special issue E: If you answer special issue D 'Yes,' and only in that event, then answer special issue E. Was such failure, if any, negligence upon the part of the operatives of said locomotive and train, as the term 'negligence' has been defined to you herein? Answer 'Yes' or 'No' as you find the facts to be.

"If you answer special issue E 'Yes' and only in that event, then answer special issue F.

"Special issue F: Was such negligence, if any, the proximate cause of plaintiff's injury, if any you find he sustained. Answer 'Yes' or 'No' as you find the facts to be.

"Special issue G: Did the operatives of the said locomotive cause said locomotive to unnecessarily and unusually emit and discharge steam from the side thereof, and did they operate the same with unnecessary and unusual noise while propelling the same backward over the 'unloading track' and in the direction of plaintiff? Answer 'Yes' or 'No' as you find the facts to be."

Special issue H becomes wholly immaterial, as does also special issue I.

"Special issue J: Did the operatives of said locomotive and train, or either of them, discover and realize that plaintiff's team had become frightened and unmanageable, and did they thereafter fail to exercise ordinary care and prudence by the use of the means at hand to avoid injuring the plaintiff? Answer 'Yes' or 'No' as you find the facts to be.

"Special issue K: If you answered special issue J 'Yes,' and only in that event, then was such failure to exercise ordinary care and prudence, by the use of the means at hand to avoid injuring plaintiff, the proximate cause of plaintiff's injury, if any he sustained? Answer 'Yes' or 'No' as you find the facts to be.

"Special issue L: Did the operatives of said locomotive and train, or either of them, know and realize that plaintiff was at the car with his team engaged in loading freight into said car at the time they drove said train onto the unloading track? Answer 'Yes' or 'No' as you find the facts to be.

"If you answer special issue L 'Yes,' then you need not answer the next issue, but, if you answer special issue L 'No,' then answer the following:

"Special issue M: Would the operatives of said locomotive and train have discovered and known of the presence of plaintiff and his team at the car where plaintiff was unloading freight at the time they propelled said train toward the car in time to have avoided injury, if any, to plaintiff had they exercised ordinary care and prudence, under the circumstances? Answer 'Yes' or 'No' as you find the facts to be.

"Special issue N: If you answered special issue M 'Yes,' and only in that event, then was such failure to discover plaintiff's presence at the car with his team negligence upon the part of the operatives of said locomotive and train as that term has been defined to you herein? Answer 'Yes' or 'No' as you find the facts to be.

"Special issue O: If you answer special issue N 'Yes,' and only in that event, then was such negligence the proximate cause of plaintiff's injury, if any? Answer 'Yes' or 'No' as you find the facts to be.

"Special issue T: Did the fireman or any other member of the train crew see the plaintiff and his team at the car while they were propelling said locomotive and cars backward over the 'unloading track' in the direction of plaintiff and his team, and did they discover and realize that plaintiff's team had become frightened and unmanageable, and did they understand and appreciate the danger of injury to plaintiff, and realize that plaintiff probably would not extricate himself from his situation in time to have enabled the operatives of the train to avoid the injury, if any, by the use of ordinary care? Answer 'Yes' or 'No' as you find the facts to be."

In view of the jury's answer to special issue T, they were not called upon to answer special issues U and V.

To each and all the special issues above submitted for the jury's consideration, they returned an affirmative answer, with the exception of issue G and issue T, to which they returned a negative answer.

The jury further answered that $2,500 would be a reasonable and fair compensation for the injuries sustained by the plaintiff.

After the verdict was returned, both appellant and appellee moved for judgment on the verdict, and appellee's motion was granted, and that of appellant refused, and from that action of the court this appeal has been prosecuted.

Counsel for appellant present no assignment challenging the correctness of the trial court's action as to the form or substance of any issue submitted to the jury, nor do they challenge the sufficiency of the evidence to support any finding made by the jury, but they do contend that, in view of the jury's answer to special issue G and the answer to special issue T, the trial court should have rendered judgment upon the verdict as a whole in favor of appellant, because, as they assert, all the other answers returned by the jury, as we have shown them above, became immaterial in view of their finding that, as shown by special issue G and special issue T that appellant's train, while backing down the unloading track was making no unusual or unnecessary noise, but, on the other hand, was being operated in the usual and customary way, and, as established by the answer to special issue T, there could be no recovery against appellant under the principle or rule of discovered peril. In other words, the contention advanced by able counsel for appellant is, in effect, that, since it was established by the jury's answer to special issue G, that appellant's train, at the time in question, was being operated in the usual and customary manner, and that it was making no unusual or unnecessary noise, appellant owed no duty to appellee to give him any character of warning of the approach of its train, and owed him no duty to keep a lookout for him and his team, and that therefore there could be no recovery by appellee in this case, unless it could

recover under the principle or rule of discovered peril, and that, being cut off from recovery under that rule by the answer of the jury to special issue T, appellant's motion for judgment upon the verdict as returned should have been granted, regardless of all other answers made by the jury, which, as counsel assert, were rendered wholly immaterial, in that none of them established any actionable negligence against appellant.

[1] Of course, if this contention be correct, it was the duty of the trial court to enter judgment upon the jury's verdict in favor of appellant, because immaterial findings of fact made by a jury have no effect as a verdict, and cannot be properly considered as a basis for the court's judgment. But as to whether all the issues of fact established by the jury in favor of appellee were immaterial depends upon the particular facts of this case, as shown by the evidence.

We shall state, as briefly as possible, such of the material facts shown by the evidence as we deem necessary to a disposition of the contention made by appellant, as above stated. The evidence shows that two days before the appellee was injured, Mrs. Conner, who lives in the town of Woodville, applied to appellant's local agent there for a freight car in which to ship to the town of Nacogdoches household furniture, etc., and on the next day the car was placed on appellant's unloading track in close proximity to its depot, and appellee commenced hauling Mrs. Conner's household furniture and loading it into the car. In doing this work, he would drive his wagon alongside the car until the wagon was opposite the door, and unload the freight from the wagon into the car, there being a space of about one foot between his wagon and the car. He continued loading this car until about noon of the next day, at which time one of appellant's freight trains on its main line came into the town of Woodville going north (its main line running north and south). The depot is located just west of the main line track. Just north of the depot, about 800 feet, as best we can tell from the evidence, is a switch stand, by means of which a train may be switched from the main line track onto the unloading track, on which the car was placed and being loaded at the time in question. This unloading track, as the evidence shows, is west of the main line about 45 feet, as best we can tell, and the unloading track is somewhere between 200 and 300 yards in length. After stopping at the depot a few minutes, appellant's freight train proceeded up the main line track north to the switch stand for the purpose of setting out onto the unloading track an empty box car. In doing this, the operatives of the train proceeded south upon the unloading track with the empty box car behind the engine. In other words, the operatives were switching the train backward down the unloading track, in the direction of the car that appellee was loading.

There was evidence in the case sufficient to show that it had been the custom of appellant for a number of years to place cars on the unloading track for the purpose of being loaded or unloaded by patrons of the company, and that this was practically an everyday occurrence. There was also sufficient evidence to show that it was customary for some of the train crew placing cars on the unloading track to notify persons who may be loading or unloading freight on that track of the purpose and intention of the operatives of the train crew to place other cars on that track before doing so. There was also evidence sufficient to show that appellee was aware of this custom, and he so testified, and also that he relied upon it. There was also evidence sufficient to show that, when cars were being switched in on the unloading track backward, it was customary to have some member of the crew on the front end of the car that was being switched in, so as to notify persons who might be engaged in loading or unloading freight from other cars on the unloading track of the approach of the in-coming train. There was also evidence sufficient to show that the train crew that made this switching operation on the day in question knew that appellee was loading freight into the box car on the unloading track before appellant's train crew switched the empty box car onto the unloading track on the occasion in question. In fact, appellant's local agent at Woodville testified that he notified the train crew that made this switching operation that appellee was loading freight into the car that had been placed on the unloading track for that purpose, before the switching operation was made.

Appellee testified that the first he knew of the approach of the train down the unloading track was when he noticed his team becoming restive, and that he then looked up and saw the switching train coming down the unloading track in his direction, his team at the time facing this train. He testified that when he made this discovery, the switching train was about 100 yards from him, and that he could see the fireman sitting in his place in the engine, and the fireman was looking in appellee's direction, and continued to look in his direction as the train approached appellee's team, and that the nearer the train approached the more restive his team became, and that the switching train continued to approach at a speed of about 5 or 6 miles an hour, and that the fireman continued to look in appellee's direction and could plainly see him and his team, and that the switching train continued to approach, without lessening its speed, until within about 25 yards of appellee's team, at which time his team had become so unmanageable and frightened that he could no longer hold them, and that the

team broke and ran, knocking appellee down, inflicting the injuries for which he sued. He testified that, as the switching train approached him, as we have shown, the fireman seemed to be laughing, and all the time looking in the direction of appellee and his team, but that, notwithstanding the fact that his team was becoming more restive and frightened, as the fireman could see, there was no effort made by those in charge of the engine to stop the approaching train or to slacken its speed.

The engineer in charge of the engine that was doing the switching testified that he at no time saw appellee or his team on the occasion in question until his attention was called to the fact by the fireman that a team was running away, but that the team at that time had gone some distance away from the railroad premises. The fireman testified, in substance, that he did not see appellee or his team at the car on the unloading track, and never discovered the team until it had run away and was some distance from the unloading track. Both the engineer and fireman testified that they did not know that appellee or any one else was loading freight in the car on the unloading track on that day, but they both admitted that it was customary for patrons of the company to load and unload freight on that track, as appellee was doing at the time he was injured.

[2] Now it is upon these facts, stated as briefly as we could state them, and the findings made by the jury, as we have shown them, that appellant insists the judgment should have been rendered in its favor. Counsel for appellant insist that it is the rule, well established by the authorities in this state, that the operatives of a railroad train, while the same is being operated in the usual and proper manner and while no unusual or unnecessary noises are being made, are not required to keep a lookout for or to in any manner warn persons driving a team on the highways near the railroad track of the approach of the train, nor are the operatives of the train required to keep such lookout or give warning to such persons at or about the railroad company's stations, and that, where a team becomes frightened at the approach of a train, under such circumstances, and injury results, there can be no recovery of damages against the railroad company, except upon the principle or rule of discovered peril. This contention, as a general abstract proposition, seems to be well established by the authorities. Hargis v. Railway Co., 75 Tex. 19, 12 S. W. 953; G., H. & S. A. Railway Co. v. Graham (Tex. Civ. App.) 101 S. W. 846; Railway Co. v. Reynolds (Tex. Civ. App.) 209 S. W. 184; and a number of other authorities in support of the proposition cited in appellant's brief. But the question for our determination here is whether the general rule contended for by appellant controls this case.

[3] If it be conceded upon the facts of this case, as we have stated them, that the operatives of appellant's train were under no duty to warn appellee that they were going to switch in on the unloading track, and that there was no duty resting upon appellant to have some one on the front end of the backing train to notify appellee of the approach thereof, still we think that we could not correctly hold that there was no actionable negligence established against appellant in this case. We think that upon the undisputed facts in this case, appellee was an invitee upon appellant's premises at the time he was injured. If he was there by appellant's invitation, either express or implied, he was an invitee, and appellant owed to him ordinary care. It must be admitted that he was there by appellant's implied invitation at least, for he was there carrying on business with the company. We take the following from a standard authority on this point:

"To come under an implied invitation, as distinguished from a mere license, the visitor must come for a purpose connected with the business in which the occupant is engaged, or which he permits to be carried on there. There must at least be some mutuality of interest in the subject to which the visitor's business relates, although the particular thing which is the subject of the visit may not be for the benefit of the occupant." Elliott on Railroads, vol. 3, § 1249.

Of course, it could not be plausibly contended that appellee, in loading the freight for Mrs. Conner into appellant's railroad car, was not engaged in a business in which the shipper and the carrier were mutually concerned, and the appellee here sustained to the railroad company the same relation that existed between the railroad company and Mrs. Conner herself, appellee acting simply as the agent of Mrs. Conner in loading the freight into the car. Being an invitee on appellant's premises, it was appellant's duty, under all authorities, to use ordinary care towards appellee, of whose presence the operatives of appellant's train were aware before the train was switched onto the unloading track where he was engaged. M., K. & T. Railway Co. v. Thomas, 48 Tex. Civ. App. 646, 107 S. W. 868.

[4] We have already shown that special issue J, as submitted to the jury, was as follows:

"Did the operatives of said locomotive and train, or either of them, discover and realize that plaintiff's team had become frightened and unmanageable, and did they thereafter fail to exercise ordinary care and prudence, by the use of the means at hand, to avoid injuring the plaintiff?"

This issue, as we have shown, was answered in the affirmative. Now we think that the testimony of the appellee, to the effect that the fireman on the engine that was backing down the unloading track saw him and his team and could see that his team was

restive and frightened, and that the train kept approaching in the direction of the team until within a short distance without slacking its speed, his team in the meantime becoming more frightened and unmanageable, was sufficient to support the answer of the jury to special issue J, which convicted appellant of negligence. In other words, we think that it was an issue of fact to be determined by the jury upon this testimony as to whether the operatives of the engine failed to use ordinary care towards appellee in continuing to approach in his direction after discovering the fact that his team had become frightened and was becoming unmanageable, without stopping the engine or slacking its speed in order to give appellee an opportunity to calm his team or get it out of the way, and, this issue having been determined in appellee's favor, and it having been also determined that such negligence on the part of the operatives of the engine was the proximate cause of appellee's injuries, the court could not have properly rendered judgment for appellant, but, on the contrary, it was the court's duty to render judgment in favor of appellee upon this one issue alone, if upon no other.

[5] We have carefully considered all the authorities cited by appellant, but have concluded that none of them support counsel's contention that there was no actionable negligence established against appellant in this case. The authorities cited by appellant which seem to be most in point are Railway Co. v. Graham, and Railway Co. v. Reynolds, supra. It will be noted in the Graham Case that the plaintiff had left his team near the railroad company's track unhitched, and that, when the train came up and was within a very few feet of the team, it suddenly became frightened and jumped in front of the engine and was killed. Judge Fly, in reaching the conclusion that there was no negligence shown in the case, was careful at several places in the opinion to state that the evidence showed that those in charge of the engine never discovered the plaintiff's team until the team was practically on the track within a few feet of the engine, and that no degree of care on the part of the operatives of the engine at that time could have saved the team. In the Reynolds Case, the judgment for the plaintiff was reversed because the trial court instructed the jury, in effect, that it was the duty of the operatives of the railroad engine to use ordinary care to discover the plaintiff's team, one of which was killed. The court, speaking through Judge Hodges, stated very clearly that the only vice in the charge was the burden placed upon the railroad company to use ordinary care to *discover* the team, whereas in the instant case the jury has found affirmatively, and the evidence was sufficient to support that finding, that the operatives of appellant's engine,

while coming down the unloading track in fact knew of the presence of appellee at the car where he was engaged, and saw that his team, according to appellee's testimony, were becoming frightened at the approach of the train, and that they continued to approach his frightened team without making any effort to stop or slacken the speed of the train, and the jury found, in effect, in answer to issue J, that this constituted a failure on the part of the operatives to use ordinary care towards appellee, and it is not our province to find to the contrary. Dooley v. M., K. & T. Ry. Co., 50 Tex. Civ. App. 298, 110 S. W. 135; Railway Co. v. Burk (Tex. Civ. App.) 146 S. W. 600; Railway Co. v. Carson, 66 Tex. 345, 1 S. W. 107; Railway Co. v. Stonecypher, 25 Tex. Civ. App. 569, 63 S. W. 946.

If we are right in the conclusion that the answer of the jury to special issue J established actionable negligence against appellant upon the particular facts of this case, it follows that upon that finding alone the judgment against appellant was proper and should be affirmed, regardless of all other questions in the case, and we pass upon no other.

The judgment will be affirmed.